**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0616n.06

**No. 10-4152**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jul 01, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ROBERT J. ALLEN, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| DONALD MARTIN, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| TERRY J. COLLINS, et al., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

_____ /

Before:       KEITH, MARTIN, and ROGERS, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.  Twenty-three parole-eligible prisoners in the Ohio Department of Rehabilitation's custody initiated *pro se* this putative class action in district court pursuant to 42 United States Code section 1983, alleging that the Ohio Parole Board's retroactive application of its parole guidelines, policies, and procedures violated their rights under the Ex Post Facto and Due Process Clauses of the United States Constitution.  In their amended complaint, the prisoners sought declaratory and injunctive relief from: the Parole Board's implementation of the 2007 Guidelines Manual; the Parole Board's implementation of portions of the Victims' Rights Statute; other Parole Board policies and procedures; and the cumulative changes in parole standards and procedures.

In the midst of the litigation, the Parole Board rescinded the 2007 Guidelines Manual, and the district court subsequently held that the rescission mooted the prisoners' claim challenging it. The district court then granted the Parole Board's motion for summary judgment on the prisoners' claims challenging the Parole Board's implementation of the Victims' Rights Statute and other Parole Board policies and procedures. The district court held that the prisoners' claim regarding the cumulative changes in parole standards and procedures failed as a matter of law given the reasoning of *Foster v. Booker*, 595 F.3d 353 (6th Cir. 2010). The district court then dismissed as "moot" the prisoners' pending motions—including those for an Order Reopening Discovery pursuant to Federal Rule of Civil Procedure 56(f) (now Rule 56(d)) and for class certification. Of the plaintiffs named in the amended complaint, only prisoner Donald Martin appealed the district court's judgment. We **AFFIRM** the district court's judgment.

Martin and the original plaintiffs in this case are "old-law" prisoners, having received indeterminate sentences before 1996. On July 1, 1996, the Ohio Legislature enacted a new sentencing scheme, SB2, which prospectively eliminated indeterminate sentencing and parole. The Ohio Legislature did not apply SB2 retroactively to those prisoners who had been sentenced prior to its enactment. So, those prisoners, such as Martin, who were issued indeterminate sentences before July 1, 1996, remain subject to the Parole Board, which has denied parole to Martin and the proposed class members. On appeal, Martin argues: 1) the rescission of the 2007 Guidelines did not moot his challenge to them; 2) the Victim's Rights Statute violated his rights under the Ex Post Facto Clause; 3) the cumulative changes to policies and procedures violated his rights under the Ex Post Facto Clause; and 4) the district court abused its discretion in dismissing the prisoner's motion for

an order reopening discovery pursuant to Federal Rule of Civil Procedure 56(f). We address each argument in turn.

First, we address Martin's argument that the district court should not have determined that his challenge against the 2007 Guidelines became moot when the Parole Board rescinded them. We review *de novo* a district court's application of the mootness doctrine to a claim or case. *Cleveland Branch, NAACP v. City of Parma,* 263 F.3d 513, 530 (6th Cir. 2001) (citing *Craft v. United States*, 233 F.3d 358, 373 (6th Cir. 2000)).

The district court did not err in applying the mootness doctrine to Martin's claim for declaratory and injunctive relief from the 2007 Guidelines. When considering whether a claim for declaratory relief is moot, "'the question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Campbell v. PMI Food Equipment Group, Inc.*, 509 F.3d 776, 781 (6th Cir. 2007) (quoting *Coal. for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 459 (6th Cir. 2004)). In *Campbell*, workers filed suit in district court seeking a declaratory judgment that a tax-abatement agreement that their employer had entered into violated their constitutional rights. *Id*. The district court dismissed the workers' claim for declaratory relief as moot, because the agreement had expired before the court issued its final order. *Id*. We affirmed, reasoning that because the agreement was no longer in effect, no party had a continuing obligation under it; "[g]ranting declaratory relief would therefore have no effect on the [w]orkers' current legal interests." *Id*.

Martin is in a position similar to that of the workers in *Campbell*: he has asked the district court to declare as unconstitutional a document—the 2007 Guidelines—that no longer exists. A controversy—let alone a substantial one—cannot exist because the Board rescinded the 2007 Guidelines, effective April 1, 2010, stating that "the Board will no longer use the Guidelines Manual for any purpose, including the release decision process." As a result, the 2007 Guidelines, like the agreement in *Campbell*, cannot affect Martin's legal interests. The district court correctly found that Martin's claim for declaratory relief as to the 2007 Guidelines was moot.

Similarly, the district court reached the correct conclusion in holding that Martin's claim for injunctive relief from the Parole Board's use of the 2007 Guidelines had become moot. In applying the mootness doctrine to a claim seeking injunctive relief, we consider the claim to be moot when either "'the issues presented are no longer 'live'" or the "'parties lack a legally cognizable interest ['personal stake'] in the outcome.'" *Banas v. Dempsey*, 742 F.2d 277, 281 (6th Cir. 1984). (quoting *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396 (1980) (parallel citations omitted)). In *Banas*, welfare recipients sought an injunction to prevent the state from enforcing a policy which they alleged violated their constitutional rights. *Id*. at 281. During the course of the litigation, Congress amended a statute which prevented the state from enforcing the policy. *Id*. Because the state no longer implemented the policy, there was no longer any state action for the court to enjoin. *Id*.

Here, too, the district court could not enjoin the Parole Board from using the 2007 Guidelines because they no longer exist. Martin simply cannot have a personal stake in rescinded policies.

Martin asserts that two exceptions to the mootness doctrine apply: the exception for an action capable of repetition, yet evading review; and the voluntary cessation doctrine. The district court correctly found that the first exception did not apply. We have explained that the "'capable of repetition, yet evading review' exception to the mootness doctrine applies in those exceptional cases where a plaintiff makes a reasonable showing that he or she will again be subjected to the sanction." *Thomas Sysco Food Servs. v. Martin*, 983 F.2d 60, 62 (6th Cir. 1993) (quoting *ConnAire, Inc. v. Sec'y, U.S. Dep't of Transp.*, 887 F.2d 723, 725–26 (6th Cir. 1989)). This exception is limited to a situation that meets two conditions: "(1) the challenged action is too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party would be subject to the same action again." *Id*. (citing *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (parallel citations omitted); *Ahmed v. Univ. of Toledo*, 822 F.2d 26, 28 (6th Cir. 1987)). And the plaintiff bears the burden of proffering facts to meet both conditions. *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) (citing *Deja Vu of Nashville v. Metro. Gov't. of Nashville & Davidson Cnty.*, 274 F.3d 377, 390–91 (6th Cir. 2001) (rest of string citation omitted)).

This exception cannot apply in Martin's case because Martin has not satisfied the second condition: he has not produced evidence showing a reasonable expectation that he will be subjected to the 2007 Guidelines—or any Parole Board guidelines—in the future. The record shows that Martin cannot have a reasonable expectation that the Board would subject him to the 2007 Guidelines or policies they contain. The Board informed Martin and the district court that it will no longer use such guidelines; rather, it "will continue to give every inmate meaningful consideration

for parole, and exercise its discretionary releasing authority by utilizing the Ohio statutory and Administrative Code provisions, which have essentially remained unchanged since 1975."

For the first time on appeal, Martin argues that the voluntary-cessation doctrine applies to prevent his claim from being moot. We will not consider Martin's argument that the voluntary-cessation doctrine applies because he did not argue this point of law in the district court, and our function as an appellate court is "'to review the case presented to the district court, rather than a better case fashioned after a[n] . . . unfavorable order.'" *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) (quoting *Barner v. Pilkington N. Am., Inc.,* 399 F.3d 745, 749 (6th Cir. 2005)).

Yet the prisoners did argue in the district court, and Martin now argues on appeal, that the Parole Board's rescission of the 2007 Guidelines did not moot their claims because the 2007 Guidelines will have a continuing probable effect: namely, that each successive major revision to the parole guidelines makes it more difficult to get parole, which increases the measure of punishment for their offenses. The prisoners analogize their case to *Reno v. Bossier Parish School Board* 528 U.S. 320 (2000). In *Reno*, a school board argued that challenges to its redistricting plan were moot because the school board itself had rescinded the plan and promised never to use it again for any purpose. *Id.* at 327–28. The Court disagreed that the challenges were moot because it determined that the plan would have a "probable continuing effect" given that it would "serve as the baseline" against which the Board's next voting plan would be evaluated. *Id.*

Here, the prisoners have offered no evidence to show that the 2007 Guidelines would serve as the baseline for future parole guidelines. The Parole Board has explained that it will no longer

consult the 2007 Guidelines in any way and instead will rely upon the relevant statutes and regulations to make parole determinations. We agree with the district court that the prisoners have offered no evidence that the 2007 Guidelines will have a probable continuing effect upon the prisoners and that their attempt to analogize their situation to *Reno* fails.

We now address Martin's argument that the district court erred in granting summary judgment on his claim that the Parole Board's implementation of the Victim's Rights Statute violates the U.S. Constitution's Ex Post Facto Clause. We review *de novo* a district court's grant of summary judgment. *EEOC v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1093 (6th Cir. 1998). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. (citing Fed. R. Civ. P. 56(c)). The party moving for summary judgment must show an absence of evidence to support the nonmoving party's case. *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (parallel citations omitted)). We must determine either whether the evidence—when viewed in the light most favorable to the nonmoving party—presents a sufficient disagreement to require submission to the fact-finder, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). If the plaintiffs intended for an action to proceed on a class basis, and if their class-certification motion was still pending when the district court granted the state's motion for summary judgment, then the named plaintiffs "must show that a genuine issue of material fact exists *as to each named plaintiff*." *Michael v. Ghee*, 498 F.3d 372, 374 n.1 (6th Cir. 2007) (emphasis added).

Here, although the plaintiffs intended their action to proceed on a class basis, the district court, as in *Michael*, granted the Parole Board's motion for summary judgment before certifying the class. Only one named plaintiff remains: Martin. Thus, Martin must show that a genuine issue of material fact exists with regard to the claim that the Victim's Rights Statute has violated his rights.

But this Martin cannot do because the statute applies only to those convicted of murder or aggravated murder, and he was convicted of voluntary manslaughter and theft. The Victim's Rights Statute, Ohio Revised Code section 2967.12(B), requires the Parole Board to notify a victim's representative of a prisoner's pending release if the victim's representative has requested such notice pursuant to Ohio Revised Code section 2930.16. Ohio Rev. Code Ann. § 2967.12(B) (West 2012). Section 2967.12(B) further provides that "if the prisoner being considered for parole was convicted of or pleaded guilty to violating section 2903.1 [aggravated murder] or 2903.02 [murder] of the Revised Code," then the victim's representative or immediate family members may request a full board hearing relating to the potential parole of the prisoner and will "have the right to give testimony at a full board hearing of the parole board . . ." Ohio Rev. Code Ann. § 2967.12(B) (West 2012). If the victim's representative or immediate family requests such a full board hearing, then the request must be granted. Ohio Rev. Code Ann. § 5149.101(A)(2) (West 2012). The Parole Board must consider the testimony. Ohio Rev. Code Ann. § 2967.03. The prisoner being considered for parole has no right to be present at the hearing—but may be represented by counsel or some other person the prisoner designates. Ohio Rev. Code Ann. § 5149.101(C) (West 2012). As noted above, Martin was convicted of voluntary manslaughter and theft—not aggravated murder or murder.

Therefore, none of these provisions of the Victims' Rights Statute could have violated his rights, and the district court correctly granted summary judgment to the Parole Board on this claim.

We now address Martin's claim that the cumulative effects of changes in the Parole Board's policies and procedures over time violated his rights under the Ex Post Facto Clause. The prisoners asserted, in their amended complaint, that the cumulative effects of parole changes over time had "increased the length of incarceration before parole for members of the class." The district court held that this claim "fail[ed] as a matter of law[,]" and it granted summary judgment to the Parole Board as to this claim, based on our reasoning in *Foster v. Booker*, 595 F.3d 353 (6th Cir. 2010).

We may affirm the district court's judgment "if correct for any reason, including a reason not considered" by the district court. *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985) (per curiam) (citing *J.E. Riley Inv. Co. v. Comm'r*, 311 U.S. 55, 59 (1940) (parallel citations omitted)). Stated differently, "[w]here the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave a wrong reason for its action." *J.E. Riley Inv. Co.*, 311 U.S. at 59 (citing *Helvering v. Gowran*, 302 U.S. 238, 245 (1937) (parallel citations omitted).

The district court did not err in granting summary judgment to the Parole Board on this claim. The Ex Post Facto Clause of the United States Constitution prohibits laws that "'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *Foster v. Booker*, 595 F.3d 353, 361–62 (6th Cir. 2010) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (parallel citations omitted)). The relevant inquiry, for purposes of determining whether a retroactively applied law violates the Ex Post Facto Clause, is whether the new parole guideline or

policy "present[s] a significant risk of increasing the plaintiff's amount of time actually served."

*Michael v. Ghee*, 498 F.3d 372, 383 (6th Cir. 2007) (citing *Garner v. Jones*, 529 U.S. 244, 255

(2000)). A prisoner seeking to prove that a law's or a policy's retroactive application creates a

sufficient risk of increasing the measure of punishment applied to him or her may satisfy his or her

burden in one of two ways.

First, "plaintiffs can establish an ex post facto violation if they can show that the guidelines

[or laws], on their face, show a significant risk of increased incarceration." *Michael*, 498 F.3d at 384

(citing *Garner*, 529 U.S. at 255).

But Martin has not identified any changes in specific parole policies over time that have

affected him.

Second, where the policy does not, by its own terms, show a significant risk of increased

incarceration, a plaintiff must demonstrate, by evidence drawn from the policy's practical

implementation by the agency charged with exercising discretion, that its application will result in

a longer period of incarceration than under an earlier policy. *Michael*, 498 F.3d at 384 (citing

*Garner*, 529 U.S. at 255; *Dyer v. Bowlen*, 465 F.3d 288, 291 (6th Cir. 2006) (explanatory

parenthetical omitted)). Plaintiffs in our circuit "need not show an actual increase in punishment,

but rather a 'sufficient risk' of increased punishment." *Id*. (citing *Dyer*, 465 F.3d at 280).

Here, again, Martin cannot make out an Ex Post Facto claim because he has not identified

the purported changes in parole policies that have created these supposed cumulative effects.

Lastly, we review Martin's argument that the district court improperly denied the prisoners'

motion for discovery under Rule 56(f) (now Rule 56(d)), which provides that, after a motion for

summary judgment has been made, the nonmovant may request additional discovery before the district court grants the summary judgment motion if the nonmovant shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition. Fed. R. Civ. P. 56(d). The district court may then: (1) deny the summary judgment motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order. *Id.*

Here, the prisoners' Rule 56(f) motion sought: (1) documents showing how the Parole Board exercises its discretion in making parole decisions, including deposition transcripts, memoranda, emails and correspondence between Parole Board members; (2) all documents contained in the parole files of the seven representative plaintiffs in the amended complaint; (3) statistical data on inmates granted parole between 1987 and 2009, including the date of offense of conviction, the sentence imposed by the court, and the date of parole; and (4) depositions of "key" Parole Board members and staff. The prisoners' counsel averred in her affidavit in support of the Rule 56(f) motion that the Parole Board allowed the prisoners' counsel to have an informal interview with the Parole Board Chairperson, Cynthia Mausser. The Parole Board would not allow the prisoners' counsel to examine most of the documents contained in the prisoners' parole files.

We review the district court's denial of a 56(f) motion for an abuse of discretion. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (citing *Vance ex rel. Hammons v. United States*, 90 F.3d 1145, 1149 (6th Cir. 1996) (explanatory parenthetical omitted)). In considering whether a district court has abused its discretion in denying a 56(f) motion we apply five factors: (1) when the proponents of the 56(f) motion learned of the issue that is the subject of the discovery they seek; (2)

whether the desired discovery would have changed the district court's ruling; (3) how long the discovery period lasted; (4) whether the proponents of the 56(f) motion were dilatory in their discovery efforts; and (5) whether the other party was responsive to discovery requests. *Id.* (citing *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995) (citations omitted), *cert. denied*, 517 U.S. 1157 (1996) (parallel citations omitted)). Typically, where a party has had no opportunity for discovery, a district court's denial of the opposing party's Rule 56(f) motion and ruling on a summary judgment motion is likely to be an abuse of discretion. *CenTra*, 538 F.3d at 420 (citing *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (explanatory parenthetical omitted)).

Here, the prisoners had insufficient time for discovery before the summary judgment motion was granted. The record shows that the Parole Board was unresponsive to the prisoners' discovery requests. On October 14, 2009, the parties participated in a Fed. R. Civ. P. 26(f) conference, at which they stipulated to discovery. The Parole Board proposed paper discovery, electronic discovery, and depositions. The Parole Board also stated in the joint stipulation that the extent of the discovery for the named plaintiffs might be substantial due to the requirements to prove an Ex Post Facto violation. The parties agreed that the discovery cut-off date would be February 1, 2010. In their report to the district court, the parties agreed to serve their Initial Disclosures by November 6, 2009, a deadline that the prisoners met. The Parole Board did not meet this deadline, moving the district court on November 6, 2009 for an extension of time until November 13, 2009 to file their Initial Disclosures. The Parole Board failed to meet this deadline, and the prisoners, on January 22, 2010, asked the district court to set a status conference pursuant to Local Rule 37.1 to resolve the ongoing discovery dispute. The Parole Board moved for summary judgment on February 1, 2010,

without responding to the prisoners' discovery requests. On February 3, 2010, the Parole Board served Chairperson Mausser's responses to the Requests for Production and the Interrogatories. Then, on March 4, 2010, the prisoners filed their Rule 56(f) motion. Nevertheless, on August 4, 2010, the district court granted the Parole Board's motion for summary judgment.

The Parole Board's indolent and cavalier approach to dealing with its prisoners in a court of law is deeply unsettling. Were this Court directly hearing this case, we would be hard pressed to grant summary judgment to the Parole Board without giving the prisoners the benefit of discovery the way the district court did here.

But that is not the task we are given on appellate review. We "have affirmed denial of Rule 56(f) motions when the parties were given insufficient time for discovery if 'further discovery would not have changed the legal and factual deficiencies.'" *CenTra, Inc.*, 538 F.3d at 420 (quoting *Maki v. Laakko*, 88 F.3d 361, 367 (6th Cir. 1996), *cert. denied*, 519 U.S. 1114 (1997) (parallel citations omitted)). We must do so here, because discovery would not have changed the legal and factual deficiencies we have already described in Martin's claims. Thus, we are bound to conclude that the district court did not abuse its discretion in granting summary judgment without permitting discovery or ruling on the prisoners' Rule 56(f) motion. For this, and the other reasons we have discussed, we **AFFIRM** the district court's judgment.