RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

FIRST FLOOR LIVING LLC (22-3216); LUSH DESIGNS, LLC (22-3217),

                    *Plaintiffs-Appellants*,

   *v.*

CITY OF CLEVELAND, OHIO; LASTER LLC; BAUMANN ENTERPRISES, INC.; CUYAHOGA COUNTY LAND REUTILIZATION CORPORATION,

                    *Defendants-Appellees*.

Nos. 22-3216/3217

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:21-cv-00018—J. Philip Calabrese, District Judge.

Argued: December 6, 2022

Decided and Filed: September 28, 2023

Before: SILER, GILMAN, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Justin D. Stevenson, BOWER STEVENSON LLC, Cleveland, Ohio, for Appellants. Elena N. Boop, CITY OF CLEVELAND, Cleveland, Ohio, for Appellee City of Cleveland. Matthew P. Baringer, DAVIS & YOUNG, Willoughby Hills, Ohio, for Appellee Laster LLC. Richard C.O. Rezie, GALLAGHER SHARP LLP, Cleveland, Ohio, for Appellee Baumann Enterprises. Alayna K. Bridgett, HAHN LOESER & PARKS, LLP, Cleveland, Ohio, for Appellee Cuyahoga County Land Reutilization Corporation. **ON BRIEF:** Justin D. Stevenson, BOWER STEVENSON LLC, Cleveland, Ohio, for Appellants. Elena N. Boop, Nathaniel Hall, CITY OF CLEVELAND, Cleveland, Ohio, for Appellee City of Cleveland. Matthew P. Baringer, DAVIS & YOUNG, Willoughby Hills, Ohio, for Appellee Laster LLC. Phil Eckenrode, HAHN LOESER & PARKS, LLP, Cleveland, Ohio, for Appellee Cuyahoga County Land Reutilization Corporation. Robert P. Lynch, Jr., GALLAGHER SHARP LLP, Cleveland, Ohio, for Appellee Baumann Enterprises in case 22-3217 only.

SILER, J., delivered the opinion of the court in which GILMAN, J., joined. NALBANDIAN, J. (pp. 16–18), delivered a separate opinion concurring in part and dissenting in part.

––––––––––––––––

**OPINION**

––––––––––––––––

SILER, Circuit Judge.   In 2018, First Floor Living, LLC ("First Floor") and Lush Designs, LLC ("Lush Designs") (collectively "Plaintiffs") each purchased real estate parcels in Cleveland for the purpose of rehabilitating and redeveloping the properties.   First Floor's property was located at 4400 Warner Road, and Lush Designs' property was located at 7410 Linwood Avenue.   Prior to Plaintiffs' purchases, the City of Cleveland ("Cleveland") declared the buildings on the properties public nuisances, condemned them, and ordered that they be demolished.   Following the purchases, and after Plaintiffs had invested time and resources into renovating the buildings, Cleveland authorized private contractors to demolish them.

In 2021, following demolition of the buildings, Plaintiffs filed suit against Cleveland; Cuyahoga County Land Reutilization Corporation ("Land Bank"); Laster, LLC (Laster); and Baumann Enterprises, Inc. ("Baumann") (collectively "Defendants"), arguing that the demolitions violated numerous state laws and federal constitutional provisions.[1]   The district court denied Plaintiffs' Rule 56(d) motion for discovery, granted summary judgment to Defendants on the constitutional claims, and declined to exercise supplemental jurisdiction over the remaining state law claims.

Plaintiffs argue that the district court erred by denying their Rule 56(d) motion for discovery and by granting Defendants' motions for summary judgment.   We affirm.

––––––––––––––––

[1]Land Bank was the prior owner of the property that First Floor purchased, and Laster and Baumann were the private contractors hired to demolish the buildings.

**I.**

**A.**

In 2009, Cleveland declared the building located at 7410 Linwood Avenue a public nuisance and condemned it, finding that the building "constitute[d] an immediate hazard to human life and health." The property changed owners for nearly a decade until 2018, when Lush Designs purchased it. Following Lush Designs' purchase of the property, Cleveland sent a "new owner letter" via United States Postal Service ("USPS") certified mail to the Linwood Avenue address and to Leslie Gaskins, the company's statutory agent. The letter informed Lush Designs that the building located on its property had been declared a public nuisance due to numerous code violations and also included a notice of condemnation and demolition. The letter advised Lush Designs that it must correct the violations by submitting a written rehabilitation plan within ten days and satisfying all permitting requirements or the building would be demolished. Certified mail receipts indicate that the letters were received, although the letter sent to Gaskins was signed for by someone other than her. The letter addressed to the Linwood Avenue property was picked up at the post office. Cleveland also posted a condemnation notice on the building in a prominent location.

After purchasing the property, Lush Designs allegedly "invested substantial time and resources into improving and repairing" the building. Gaskins spoke with individuals at Cleveland's building department on numerous occasions and was told that the Linwood Avenue building was "not subject to" a condemnation order. However, in 2019, Cleveland issued a permit to Baumann to demolish the building. Then, after searching its database and finding no active or unrevoked rehabilitation permits for the building, Cleveland authorized Baumann to proceed with the demolition, which occurred later that month. Lush Designs learned about the demolition when its representative arrived at the property "and found an empty lot where [its] building used to stand."

**B.**

In 2016, Cleveland declared the building located at 4400 Warner Road to be a public nuisance and condemned it, finding the building "to be structurally unsafe." Cleveland posted a

notice on the building that "[t]his [s]tructure is in a DANGEROUS CONDITION and has been CONDEMNED" by the Commissioner of the Division of Code Enforcement within Cleveland's Department of Building and Housing. Cleveland also sent a letter via certified mail to the building's address, enclosing the notice that had been posted at the property. The letter listed the building violations and advised the owner that, to prevent "further enforcement action, including demolition of the property at your costs," the owner needed to file a notice of appeal with the Cleveland Board of Building Standards and Building Appeals or submit a rehabilitation plan to Cleveland's Building and Housing Department and obtain all required permits within 30 days. Thereafter, Cleveland sent another letter, this one to the State of Ohio, which owned the property at the time. That letter instructed the State to notify Building and Housing within 10 days of any corrective actions it planned to take to address the safety violations; it also included instructions for obtaining all necessary permits and submitting a written plan to the Building and Housing Department. The letter indicated that, pursuant to Cleveland Codified Order § 3103.09(k)(2), "any and all owners of the property who appear in the chain of title from the time of receipt of the condemnation notice until demolition of the building or structure are jointly and severally responsible for all costs and expenses incurred by the Department of Building and Housing."

The letter also noted that, under Ohio Revised Code § 5301.253,

> any violation notice of the Department of Building and Housing that appears on the Department's public records is notice to all subsequent purchasers, transferees, or other person who acquire[s] any interest in the real property in which the violations exist and may be enforced against their interest in the real property without further notice or order to them.

A certified mail return-receipt confirmed that the property owner, the State, received the letter. Upon receiving this notice, the State never submitted a remediation plan, filed an appeal, or addressed the safety violations.

The State then sold the property to Land Bank in late 2016, and Land Bank sold the property to First Floor in 2018. For the next two years, First Floor allegedly invested money, time, and resources into rehabilitating and developing the property. However, First Floor never applied for any rehabilitation permits.

In 2020, Cleveland mailed the same notice of condemnation and demolition order previously sent to the State of Ohio to First Floor via certified mail, both to the property address and to First Floor's statutory agent Joon Yub Kim.  The certified mail receipts indicate that the letter sent to the property was returned as "vacant" and the letter to Kim was returned as "unclaimed."  Although Cleveland argued that it posted notice at the property after First Floor's purchase, the only evidence of a posting, which the district court disregarded, was a series of "disjointed handwritten notes on what appears to be a post-it note."  Cleveland also searched its databases for evidence that First Floor had applied for any construction permits demonstrating that it intended to rehabilitate the structure.  Finding none, Cleveland authorized Laster to demolish the building.  First Floor learned about the demolition from a neighbor of the property.  First Floor unsuccessfully attempted to halt the demolition.

## C.

In 2021, Plaintiffs filed suit against Defendants, alleging (1) deprivation of property without due process in violation of the Fourteenth Amendment; (2) taking of property in violation of the Fifth Amendment; and (3) several state law claims.  After the Defendants filed motions for summary judgment, the district court held a status conference in which Plaintiffs "indicated that some discovery may be necessary to respond to the motions."  The district court directed Plaintiffs to file a Rule 56(d) motion requesting discovery.

Plaintiffs filed their Rule 56(d) motion and requested discovery in the following areas:

- internal communications by Laster and Baumann "regarding the process by which they demolished the properties";

- communications between Cleveland and both Laster and Baumann regarding those companies' relationship with Cleveland;

- the identities of the individuals involved in the building demolitions;

- "potential depositions of" those who were involved in the demolitions;

- "Land Bank[']s internal communications about the First Floor Living Property" to confirm there were "no further intentional or wrongful actions" taken by the Land Bank;

- the metadata and electronic file information of the photos attached to Cleveland's motion for summary judgment;

- Cleveland's internal communications surrounding the two demolitions;
- documentation and communications between Cleveland and both Laster and Baumann;
- the identities of "the specific individuals responsible for and involved in sending and posting any notices directed at the Plaintiffs";
- "potential depositions" of the individuals involved in sending and posting the notices;
- other situations where Cleveland demolished properties "under similar circumstances to those of Plaintiffs";
- documentation and information about the routine practices followed by Cleveland in issuing notices and demolishing buildings.

In the attached Declaration supporting the Rule 56(d) motion, Plaintiffs admitted that "much of the information regarding the merits of [their] claims . . . lie[s] in the[ir] possession," but they wanted to "test or verify" the information provided by the Defendants.

The district court denied Plaintiffs' Rule 56(d) request for discovery for two reasons. First, it found that they failed to make a reasonably particularized showing "of why they need discovery or the material facts they hope to uncover." Second, although the law generally favors discovery, it found that Plaintiffs' requested discovery was unnecessary because "threshold legal questions" could "expeditiously and efficiently dispose of the case."

The district court granted Defendants' motions for summary judgment. It first found that the notice provided to both First Floor and Lush Designs was sufficient to satisfy due process. As for the Linwood Avenue property, the district court determined that (1) Lush Designs and its statutory agent received certified letters regarding both the condemnation determination and the demolition order; (2) notice of condemnation and the demolition order were posted at the property; and (3) Cleveland provided notice to previous owners, and even if city employees provided Lush Designs with false or inaccurate information, "transfer of ownership does not erase the City's prior efforts to provide notice to interested parties."

The district court found that it was "a closer call" whether First Floor received adequate notice on the Warner property. After all, although Cleveland sent notice to both the property and First Floor's statutory agent, both letters were returned undelivered. The district court also found that "the record is not clear regarding whether" a posting of the condemnation and demolition

order "actually occurred" at the property after First Floor took possession.  However, it did find that Cleveland had a routine practice of posting notices on properties, and that First Floor failed to proffer any evidence "in the face of an established routine practice that the posting did not occur."

Ultimately, the district court found that Cleveland "undertook reasonable and fairly extensive efforts beginning in 2016 to provide notice," including posting the Condemnation and Violation Notice at the Warner Road property in 2016; sending a violation notice explaining the need for a rehabilitation plan to the 2016 owner, the State of Ohio; issuing notices of the violations to First Floor and its statutory agent; and searching its records to ensure that First Floor had not applied for any permits to address the violations.  All of this, the district court reasoned, was enough to find that First Floor received constitutionally sufficient notice.

For the same reasons articulated for Cleveland, the district court also granted summary judgment to Baumann and Laster.  And because Plaintiffs "provided no evidence that the Land Bank was involved" in the condemnation or demolition of the Warner Property, it also granted Land Bank's summary judgment motion.  The district court determined that Plaintiffs had abandoned their Fifth Amendment takings claim, and because no federal constitutional issues remained, it declined to exercise supplemental jurisdiction over the remaining state-law claims and dismissed the case.

Plaintiffs timely appealed.[2]

## II.

### A.

We affirm the district court's denial of Plaintiffs' Rule 56(d) motion.[3]  Rule 56(d) permits, but does not require, a district court to defer consideration of a defendant's motion for

---

[2]Plaintiffs do not contest the district court's grant of summary judgment to Land Bank, but they do contest summary judgment as to Baumann and Laster.  They also do not challenge the district court's grant of summary judgment on the Fifth Amendment takings claim.

[3]Although previously found in Rule 56(f), a motion requesting additional time for discovery "is now designated as Rule 56(d)." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 n.7 (6th Cir. 2014).

summary judgment until after the parties have conducted discovery. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014) (citing Fed. R. Civ. P. 56(d)). "This court reviews a district court's decision on a Rule 56(d) motion for discovery for an abuse of discretion." *Doe v. City of Memphis*, 928 F.3d 481, 486 (6th Cir. 2019) (internal quotations omitted) (quoting *In re Bayer Healthcare & Merial Ltd. Flea Control Prods. Mktg. & Sales Pracs. Litig.*, 752 F.3d 1065, 1074 (6th Cir. 2014)). This means that we will not reverse the district court's decision unless the "ruling was arbitrary, unjustifiable, or clearly unreasonable." *Id.* (quoting *E.M.A. Nationwide, Inc.*, 767 F.3d at 623).

We generally apply the following five-factor test to determine whether the district court abused its discretion by denying a Rule 56(d) motion:

> (1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests.

*CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (quoting *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995)). But this is an ill-fitting test "when the parties have no opportunity for discovery," and we have generally held that, in the absence of any discovery, "denying the Rule 56[(d)] motion and ruling on a summary judgment motion is . . . an abuse of discretion." *Siggers v. Campbell*, 652 F.3d 681, 696 (6th Cir. 2011) (quoting *CenTra, Inc.*, 538 F.3d at 402); *see also White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231 (6th Cir. 1994) (holding "in the instant case" that the grant of summary judgment without any discovery was an abuse of discretion).

However, notwithstanding the strong presumption in favor of permitting discovery before ruling on a motion for summary judgment, a district court does not abuse its discretion by denying a Rule 56(d) motion that is supported by mere "general and conclusory statements" or that fails to include "any details or specificity." *Zakora v. Chrisman*, 44 F.4th 452, 479 (6th Cir. 2022) (internal quotation marks and citations omitted). In those circumstances, we have affirmed a district court's denial of a Rule 56(d) motion "even when the parties were given no opportunity for discovery." *Heard v. Caruso*, 351 F. App'x 1, 14–15 (6th Cir. 2009) (internal

quotation marks and citations omitted).  And we have also affirmed when "further discovery would not have changed the legal and factual deficiencies."  *Id.* at 15 (quoting *CenTra, Inc.*, 538 F.3d at 420); *see also Allen v. Collins*, 529 F. App'x 576, 583–84 (6th Cir. 2013) (affirming the denial of a Rule 56(d) motion despite the party's "indolent and cavalier approach" and refusal to provide discovery before the court granted a motion for summary judgment because additional discovery would not have changed the claims' legal and factual deficiencies).

Here, five of Plaintiffs' discovery requests pertained to "internal communications" among the Defendants that do not relate to whether Plaintiffs received sufficient notice before the demolitions occurred.  *See Speroni S.p.A. v. Perceptron, Inc.*, 12 F. App'x 355, 359 n.3 (6th Cir. 2001).  Furthermore, as the district court found, Plaintiffs' request for documents pertaining to Cleveland's routine practices in issuing notices and demolishing buildings is irrelevant to whether Cleveland upheld its obligations under the Fourteenth Amendment's Due Process Clause in this case.  *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982) (highlighting the fact that a governmental entity's own procedures are separate from due process requirements).

Plaintiffs also requested discovery on "the identities of the individuals involved in the building demolitions," "metadata and electronic file information" of the attachments to Cleveland's motion for summary judgment, and "potential depositions" of those involved in posting the notices on the properties.  Once again, Plaintiffs failed to show why this information was relevant.  *See Burns v. Town of Palm Beach*, 999 F.3d 1317, 1334 (11th Cir. 2021) (affirming the district court's finding that a Rule 56(d) motion seeking "potential depositions" failed to "specifically demonstrate" how this "discovery would show a genuine issue of fact").  And Plaintiffs' general desire to "confirm that there were no further intentional or wrongful actions taking place," to "ensure the veracity of [Defendants'] evidence," and to determine "whether or not additional related information exists," is insufficient to support its Rule 56(d) motion.  *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 720–21 (6th Cir. 2004) (affirming the district court's denial of a Rule 56(d) motion alleging that defendants "selected some [documents] and omitted others").

Although it might have been prudent for the district court to permit discovery in this case, given the early stage of the litigation, "we cannot say that its refusal to do so was an abuse of discretion." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981); *see also Allen*, 529 F. App'x at 584 ("Were this Court directly hearing this case, we would be hard pressed to grant summary judgment . . . without giving the [plaintiffs] the benefit of discovery the way the district court did here. But . . . [w]e must [affirm], because discovery would not have changed the legal and factual deficiencies."). Ultimately, the discovery Plaintiffs requested in their Rule 56(d) motion was irrelevant to the issue of whether they received adequate notice and would not have changed the outcome of the district court's ruling. *Local Union 369, Int'l Bhd. of Elec. Workers v. ADT Sec. Servs., Inc.*, 393 F. App'x 290, 295 (6th Cir. 2010). Therefore, we hold that the district court's denial of Plaintiffs' Rule 56(d) motion was not an abuse of discretion.

**B.**

We also affirm the district court's grant of summary judgment in favor of Defendants. District court orders granting summary judgment are reviewed de novo. *Davis v. Colerain Twp.*, 51 F.4th 164, 170 (6th Cir. 2022). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

A material fact is one that "might affect the outcome of the suit under the governing law," and a genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). At the summary judgment stage, we "consider[] the facts and any inferences drawn from the facts in the light most favorable to the non-moving party." *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc) (citing *White v. Detroit Edison Co.*, 472 F.3d 420, 424 (6th Cir. 2006)).

The issue is whether Plaintiffs were given reasonable notice before the buildings were demolished. Under the Due Process Clause, actual notice is not required before the government may take property. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Instead, the government is

required to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). However, this does not mean that notice "is a mere gesture." *Mullane*, 339 U.S. at 314. Instead, "notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." *Id.* The adequacy of notice is evaluated "from the perspective of the sender, not the recipient." *Ming Kuo Yang v. City of Wyoming*, 793 F.3d 599, 602 (6th Cir. 2015) (quoting *Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013)).

**1.**

The district court properly found that the notice provided to Lush Designs was constitutionally sufficient. After Lush Designs purchased the Linwood Avenue property in 2018, Cleveland sent a "new owner letter" via certified mail both to the Linwood Avenue property address and to Lush Designs' statutory agent, Leslie Gaskins. The letter included both the notice of condemnation and demolition order and advised Lush Designs to submit a written rehabilitation plan within 10 days of receipt and to obtain all necessary city permits for any rehabilitation work. It is uncontested that the return receipts show that the letter addressed to Lush Designs was picked up at the post office.

The letter addressed to Lush Designs' statutory agent Leslie Gaskins was also successfully delivered, although it was signed by someone other than Gaskins. Although Lush Designs makes much of the fact that Gaskins was not the person who signed for the letter, requiring Cleveland to scrutinize return-receipt signatures to ensure that the proper person signed each one is unreasonable. *See Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 285 (6th Cir. 2005) (holding that although there is always more a government entity can do to provide notice, "[t]he Constitution does not require such heroic efforts by the Government; it requires only that the Government's effort be reasonably calculated to apprise a party of the pendency of the action" (quoting *Dusenbery v. United States*, 534 U.S. 161, 170 (2002) (internal quotation marks omitted))).

In addition to the certified letters, Cleveland also posted a notice on the property that included the condemnation and violation notice.  It is well established that "posting notice on real property is a singularly appropriate and effective way of ensuring that a person is actually apprised of proceedings against him."  *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 313 (6th Cir. 2021) (quoting *Jones*, 547 U.S. at 236).

Finally, before commencing demolition, Cleveland searched its databases to ensure that Lush Designs had not applied for any permits to rehabilitate the structure.  It was only after sending the notices by certified mail, posting a notice on the property, and searching for any permit applications that Cleveland issued a demolition permit and authorized the demolition of the building.  Although perhaps not heroic, Cleveland's efforts were certainly "reasonably calculated to apprise [Lush Designs] of the pendency of the action," which is all that due process requires.  *Karkoukli's*, 409 F.3d at 285.

As a last-ditch effort, Lush Designs argues that notice was somehow invalid because Cleveland employees told it the Linwood Avenue property was not on the city's demolition list.  However, informal conversations with city employees regarding the status of the property do not negate the official notice that Lush Designs received by certified mail and through the posting on the property.  *Cf. Hill v. City of Jackson*, 751 F. App'x 772, 775 (6th Cir. 2018) (affirming, on other grounds, the district court's grant of summary judgment to the defendant due to previously issued notice of condemnation despite the plaintiff's being erroneously told following purchase that his property "was not on a demolition list").

Summary judgment was proper because Lush Designs received "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Jones*, 547 U.S. at 226 (quoting *Mullane*, 339 U.S. at 314).[4]

---

[4]To the extent Plaintiffs argue that Laster and Baumann were state actors and therefore liable under 42 U.S.C. § 1983, they have failed to demonstrate, under any test, that this is true.  The public function test traditionally applies to the exercise of "powers traditionally reserved to the state, such as holding elections, taking private property under the eminent domain power, or operating a company-owned town."  *Romanski v. Detroit Ent., LLC*, 428 F.3d 629, 636 (6th Cir. 2005).  Plaintiffs have failed to demonstrate that demolition is a power "traditionally reserved to the state."  *Id.*  An argument pursuant to the nexus test fares no better.  Under the nexus test, there must

**2.**

We also affirm the district court's grant of summary judgment to Cleveland on First Floor's claim, and we find that First Floor received constitutionally sufficient notice. In granting summary judgment, the district court pointed to the following four notification efforts by Cleveland: (1) posting the Condemnation and Violation Notice at the Warner Road property in 2016; (2) sending a notice by certified mail in 2016 to the owner, the State of Ohio, regarding the Condemnation and Violation Notice; (3) sending a notice by certified mail in 2020 to both the Warner Road property and First Floor's statutory agent regarding the Condemnation and Violation Notice; and (4) searching the records to ensure that First Floor "had not secured a permit to improve the building or otherwise address the violations." The district court also noted Cleveland's routine practice of posting notices on a condemned structure if the property changes ownership after condemnation.

The district court correctly found that these actions satisfied the notice requirement. As for the first two items, notice by mail and the property posting in 2016, it is undisputed that Cleveland posted the Condemnation and Violation Notice and that the State of Ohio, the previous owner, received the mailed notice and decided to take no action. Once the State of Ohio received those notices and chose to do nothing for 30 days, the property was subject to demolition. And when a property changes hands, this does not erase a government's previous successful notification efforts or require the government to start the notification process over. "Any other conclusion . . . 'would require the [City] . . . to halt and restart nuisance proceedings every time title to a nuisance property changes hands . . . [,] unduly hamper[ing] the state's interest in demolishing blighted properties.'" *Keene Grp.*, 998 F.3d at 319 (Readler, J., concurring) (citation omitted) (alterations in original); *see also* Ohio Rev. Code § 5301.253 ("Any notice . . . of the state or a political subdivision that relates to a violation of the building or

---

be "a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 565 (6th Cir. 2007) (internal quotation marks and citations omitted). Here, Laster and Baumann were simply private contractors hired to perform a demolition and were not acting under color of state law. *See Dale E. Frankfurth, D.D.S. v. City of Detroit*, 829 F.2d 38 (6th Cir. Sept. 1, 1987) (table) (finding "demolition of the building . . . was not action taken under color of state law"). No party argues that the third and final test, the state-compulsion test, is applicable in this case. Therefore, Plaintiffs' argument fails.

housing code . . . that appears on the public records of the issuing authority is notice to all subsequent purchasers . . . and may be enforced against their interest in the real property without further notice or order to them.").[5]

However, notwithstanding Cleveland's prior successful notification efforts, Cleveland also sent the notice of condemnation and demolition to the Warner Road property address and to First Floor's statutory agent after First Floor purchased the property. First Floor does not contest that the letters were sent to the correct addresses for both the Warner Road property and its statutory agent, and First Floor offers no reasons why the statutory agent failed to claim Cleveland's mailed notice. Ultimately, although First Floor never received the mailed notices, this situation is analogous to *Keene Group, Inc.*, where we held that the plaintiff received adequate notice where letters that were sent to him but returned undelivered "were the last in a series of efforts by Defendants to provide notice of the taking to Plaintiff, rather than the only such effort." 998 F.3d at 313.

The district court also properly admitted the Rule 406 evidence regarding Cleveland's routine practice of posting notices on condemned properties. At the summary-judgment stage, courts may consider Rule 406 evidence of an organization's routine practice to infer that a routine practice was carried out. *See, e.g.*, *Doe ex rel. Rothert v. Chapman*, 30 F.4th 766, 770 (8th Cir. 2022); *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261–62 (10th Cir. 2012); *cf. J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 144, 1495–96 (6th Cir. 1991) (finding that the district court properly accepted undisputed evidence of a bank's routine practice when ruling on a summary judgment motion). Here, Cleveland presented evidence that it followed the routine practice of posting notices in approximately 12,000 demolitions since 2006. As the district court found, this habit evidence supports Cleveland's argument that it posted a

---

[5]Although it may seem unfair that the State of Ohio received both mail and posted notice while First Floor contends that it never saw any notices, Cleveland Codified Order § 3103.09(k)(2) provides that "any and all owners of the property who appear in the chain of title from the time of receipt of the condemnation notice until demolition of the building or structure are jointly and severally responsible for all costs and expenses incurred by the Department of Building and Housing." It is undisputed that the State was the owner of the property when Cleveland first sent out the condemnation notice and demolition order. It is also undisputed that the State sold the property to the Land Bank, which then sold the property to First Floor. Without deciding any liability matters here, § 3103.09(k)(2) highlights the potential joint and several liability of multiple owners when a property that is subject to demolition changes hands before the demolition occurs.

notice on the Warner Road property after First Floor took ownership, and Plaintiffs failed to show "in the face of an established routine practice that the posting did not occur."

Furthermore, First Floor failed to apply for rehabilitation permits after purchasing the property. Cleveland searched its database to ensure that no rehabilitation permits had been received before moving forward with the demolition. Had First Floor applied for rehabilitation permits, Cleveland would have halted the demolition "unless and until the permits [were] closed or revoked." Taken together, Cleveland's notification efforts "were 'reasonably calculated' to give notice to [First Floor]." *Ming Kuo Yang*, 793 F.3d at 603. Therefore, summary judgment as to all Defendants was properly granted.

**AFFIRMED**.

———————————————

**CONCURRENCE/DISSENT**

———————————————

NALBANDIAN, Circuit Judge, concurring in part and dissenting in part.  I agree with the majority that the City of Cleveland provided constitutionally sufficient notice of the Linwood Avenue Property's pending demolition to Lush Designs.  I write separately because I don't think we have enough information to decide, on summary judgment, "whether the city's [] notice efforts amounted in the aggregate to a reasonable effort to apprise [First Floor] of what was going on" with the Warner Road Property.  *Ming Kuo Yang v. City of Wyoming*, 793 F.3d 599, 604 (6th Cir. 2015).

In 2016, Cleveland posted a condemnation notice on the Warner Road Property and successfully sent a copy of the notice to the owner at the time.[1]  The property changed hands twice over the next two years, leaving it in the hands of First Floor.  Then, in 2020, Cleveland sent a copy of the 2016 notice of condemnation to the property and First Floor's statutory agent.  But Cleveland knew delivery failed.  Cleveland argues that it then posted a notice of condemnation on the Warner Road Property but, in support, proffered "disjointed handwritten notes on what appears to be a post-it note" that the district court didn't credit.  R. 60 at PageID 690.  So Cleveland also proffered evidence of its general pattern and practice of posting these types of notices, which First Floor disputed.

First, consider the obvious.  Cleveland's unsuccessful attempts to mail a copy of the notice of condemnation in 2020, standing alone, would be constitutionally deficient.  The copy mailed to the Warner Road Property was returned as "vacant" and the copy mailed to First Floor's statutory agent was returned as "unclaimed."  R. 33-10 at PageID 328; R. 33-11 at PageID 329; R. 33-12 at PageID 330.  Due process requires more from Cleveland.  *See Jones v. Flowers*, 547 U.S. 220, 225, 229–30 (2006).

———————————————

[1]If the owner fails to take necessary action to abate the nuisance, Cleveland may take appropriate action, which includes demolition.  *See* Cleveland Codified Ordinances § 3103.09(h)(1).  It is undisputed that the prior owner didn't act within the time required.

So the question is: what do we make of Cleveland's other attempts?  I question whether the notice provided to a prior owner in 2016—two years before First Floor purchased the property, and four years before it was demolished—provides First Floor its due notice. *Cf. Lampe v. Kash*, 735 F.3d 942, 943 (6th Cir. 2004) (holding that notice to counsel who stopped representing a party eight years earlier is constitutionally deficient).  We know that notice given to one party is not always imputed to another party. *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798–99 (1983).  It's possible that, if the city recorded the 2016 notice of condemnation, that would suffice. *See Kornblum v. St. Louis Cnty.*, 72 F.3d 661, 664 (8th Cir. 1995) (en banc).  But here, Cleveland didn't provide evidence that the 2016 condemnation notice was publicly available.**²**

And while posting notice on the Warner Road Property would be a "singularly appropriate and effective way of ensuring that [First Floor] is actually apprised of proceedings against [it]," *see Jones*, 547 U.S. at 236 (cleaned up), I believe that there's a genuine dispute of material fact on whether Cleveland posted a notice of condemnation on the Warner Road Property in 2020.  Recall that the district court didn't credit Cleveland's proffered "disjointed handwritten notes on what appears to be a post-it note" as evidence that it posted on the property in 2020.  R. 60 at PageID 690.  And while Cleveland proffers a declaration that explains its practice of routinely posting such notices, First Floor provides a dueling declaration that casts doubt on this routine practice.

A neighbor who lived around the corner from the Warner Road Property attests that he was "regularly present at the building, and drove past the building on a near daily basis," and didn't see a posted notice.  R. 48-1, Affidavit of David Bond, ¶¶ 9–10, PageID 508.  This, coupled with an indecipherable 2020 photograph, creates a genuine dispute of material fact. *Cf. Ming Kuo Yang*, 793 F.3d at 605−06 (finding no issue of material fact where a city's

---

**²**Judge Readler's concurrence in *Keene* expresses concern over "eras[ing]" a city's prior successful attempts at notice and the burden this might place on a government entity's interest in demolishing blighted properties. *See Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 319 (6th Cir. 2021) (Readler, J., concurring).  Point taken, but I think the concern is reduced when a demolition order has been pending for four years (and when the city sends "new owner letters").  And as much as the concern is rooted in parties evading liability for past adverse judgments, liability and constitutional notice are distinct concepts. *See, e.g.*, *Golden State Bottling Co., v. NLRB*, 414 U.S. 168, 179–80 (1973).

building-code enforcement log confirmed that a city official posted a demolish order on a building).[3]

It's clear that First Floor could have benefitted from some discovery on this issue. For example, First Floor requested depositions of the individuals involved in posting notices. If a city official tasked with posting the notice on the Warner Road Property admitted that he meant to do so, but didn't, that would be material.

To sum it up, I don't think Cleveland carried its burden to show that they are entitled to summary judgment as to the Warner Road Property. And I believe the district court abused its discretion in denying First Floor any opportunity for discovery on the Warner Road Property.

---

[3]Cleveland also argues that we can credit the undisputed fact that notice was posted on the Warner Road Property in 2016, looking to *Keene* for support. But, on my read, the demolition order in *Keene* was posted after the sale to the new owner went through. *See Keene*, 998 F.3d at 309–10, 313. And Cleveland doesn't argue that the 2016 notice was still posted on the property in 2018 when First Floor took possession of the Warner Property.