RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0107p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

LATHFIELD INVESTMENTS, LLC; LATHFIELD
HOLDINGS, LLC; LATHFIELD PARTNERS, LLC,
                              *Plaintiffs-Appellants*,

        *v.*

CITY OF LATHRUP VILLAGE; LATHRUP VILLAGE
DOWNTOWN DEVELOPMENT AUTHORITY,
                              *Defendants-Appellees*.

⎱ No. 24-1318

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
No. 4:21-cv-10193—F. Kay Behm, District Judge.

Decided and Filed: April 28, 2025

Before: GIBBONS, WHITE, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Aaron D. Cox, LAW OFFICES OF AARON D. COX, PLLC, Taylor, Michigan, for Appellants. Christian C. Huffman, GARAN LUCOW MILLER, P.C., Detroit, Michigan, for Appellee.

───────────────

## OPINION

───────────────

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff-Appellants Lathfield Investments, LLC; Lathfield Holdings, LLC; and Lathfield Partners, LLC (collectively, "Lathfield") own three commercial buildings (the "Property"), located in the City of Lathrup Village, Michigan, that are rented to various commercial tenants. Defendant-Appellees'—City of Lathrup Village

(the "Village") and the Village's Downtown Development Authority (the "DDA") (collectively, the "City")—Code of Ordinances (the "City Code") requires that all landlords apply for a landlord rental license before renting any units to commercial tenants. The City Code also requires all landlords renting to commercial tenants to list each tenant's name and principal business.

In July 2020, Lathfield sought to comply with the City Code and applied for a landlord rental license. In its application, Lathfield did not list the names and the principal businesses of its tenants, as required under Chapter 18, Article II, § 18-33(a) of the City Code. For this reason, the City denied Lathfield's application for a landlord rental license. Because Lathfield did not have a landlord rental license, the City also denied the Lathfield tenants' general business license applications.

Lathfield sued, among other parties, the Village and the DDA, a local governmental body that assists in the Village's commercial development. Broadly, Lathfield argued that the City engaged in a concerted effort to unlawfully compel it to apply for unnecessary licenses and to make unnecessary improvements to the Property. Lathfield brought eleven claims, nine of which are against the City, seeking monetary damages and various forms of relief that would allow it to continue leasing space at the Property despite its failure to obtain a landlord rental license. We affirm the district court's grant of summary judgment to the City with respect to all nine claims whose dismissal Lathfield now appeals.

I.

In October 2019, Lathfield bought the Property from Dhal Real Estate, LLC ("Dhal").[1] Because Dhal rented Property space to commercial tenants, under the City Code, Dhal was required to obtain both a general business license, Lathrup, Mich. City Code, ch. 18, art. II, § 18-30(a) (hereinafter "City Code"), and a landlord rental license, *id.*, art. IV, § 18-184(a). To obtain both general business and landlord rental licenses, under the City Code, Dhal was also required

---

[1]Although the spelling of "Dhal" is inconsistent in the record, the Michigan Department of Licensing and Regulatory Affairs website suggests that "Dhal" is the correct spelling. Mich. Dep't of Licensing and Regul. Affs., Business Entity Search, https://perma.cc/NFL9-EVVZ. Accordingly, this opinion uses "Dhal," rather than "Dahl."

to have the City inspect the Property for compliance with both the Michigan Building Code, *id.*, ch. 18, art. IV, § 18-184(b)(1); *id.*, ch. 14, art. II, § 14-26 ("The City of Lathrup Village shall apply and enforce the Michigan Building Code 2006 update, and all amendments thereto."), and the City's Zoning Ordinance ("City Zoning Ordinance"), *id.*, ch. 18, art. IV, § 18-184(b)(2).

Accordingly, Dhal arranged for the City to inspect the Property in or around December 2017. After the City inspected the Property, the City sent Dhal a notice letter describing numerous Michigan Building Code violations. Among other violations, including that Dhal had made multiple renovations without proper permits, the City found that Dhal had rented Property space to retail stores. Because the Property was not approved for retail store use, the City required Dhal to submit a new site plan, along with accompanying applications, to ensure the Property's compliance with the 2015 Michigan Building Code and the City Code.

After sending its December 2017 notice letter, the City continued to inform Dhal of various code violations on the Property. Dhal did not attempt to correct these code violations. Instead, Dhal brought suit against the City, which it subsequently agreed to dismiss after settlement discussions with the City. In the settlement, Dhal agreed to cure the Property's various code violations. But before curing the violations under the settlement, in November 2019, Dhal closed on a sale of the Property to Michigan Asset Holdings, LLC, which subsequently assigned its rights under the agreement to Lathfield.

A week before the anticipated closing date, Dhal informed Lathfield about the Property's code violations and presented Lathfield with a January 6, 2020 letter from the City stating that several outstanding code violations required the immediate submission of a new site plan, which was to be due on February 2, 2020. Undeterred by the Property's code violations and the need to submit a new site plan, Lathfield proceeded with the purchase and closed on January 28, 2020—a month earlier than the date contemplated in Lathfield's purchase agreement.

In February 2020, Jason Curis, Lathfield's managing member, met with Susan Stec, the DDA Director; City Administrator Dr. Sheryl Mitchell; City Planner Jill Bahm; and James Wright, the City's Senior Building Official for Code Enforcement, to discuss bringing the Property into compliance with the Michigan Building Code and the City Zoning Ordinance. In

that meeting, Curis acknowledged that, as a first step to bringing the Property into compliance, Lathfield was required, under the City Code, to allow the City to inspect the Property for code violations and that it needed to submit a new site plan proposing solutions to cure any discovered violations.

Lathfield allowed the City to conduct an inspection, and, in July 2020, the City issued a 174-page inspection report that detailed several Michigan Building Code violations and findings that the Property had undergone extensive renovations without proper permits, in violation of the City Code.  After the July 2020 Inspection Report was issued, Lathfield, through its legal counsel, sent the City a letter to "assure the City . . . that they are taking all reasonable and appropriate steps to bring the Propert[y] into compliance," and that Lathfield would "coordinate [further] inspections" with the City.  DE 40-10, August 2020 Letter, Page ID 1270.  Lathfield also submitted (i) applications for both general business and landlord rental licenses[2], and (ii) a site plan with its proposed solutions to cure the violations found in the July 2020 Inspection Report.  In September 2020, in response to Lathfield's submitted site plan, the City's Planning Commission issued a Site Plan Review that detailed additional City Zoning Ordinance violations on the Property, including violations related to the Property's parking lot and dumpster.  But later that month, on the condition that Lathfield would either cure the City Zoning Ordinance violations detailed in the September 2020 Site Plan Review or seek variances, the Planning Commissioners approved Lathfield's proposed site plan.

A couple of days after the Planning Commissioners approved its site plan, on September 17, 2020, Lathfield submitted applications to the City's Zoning Board of Appeals to challenge the July 2020 Inspection Report's findings on several grounds.  In its appeal applications, Lathfield argued, among other things, that (i) the building inspector misapplied the City Code, effectively compelling Lathfield to make unnecessary improvements, (ii) the City violated its due process rights because the City failed to properly adopt subsequent updates to the Michigan Building Code, and (iii) the City violated Lathfield's due process rights by providing adequate notice of Lathfield's specific violations and its right to appeal, along with a reasonable amount of

---

[2]Although the evidence in the record refers to only an application for a landlord rental license, the parties agree in their briefing that Lathfield submitted applications for both general business and landlord licenses.

time to remediate. In response, in November 2020, the City stated that the City had not issued an order or notice of violation, so there was nothing from which Lathfield could appeal.

The next month, the City denied Lathfield's applications for general business and landlord rental licenses because Lathfield did not comply with the City Code's requirement under § 18-33(a), which required Lathfield to list names and the principal businesses of its tenants. Lathfield did not subsequently resubmit its application to comply with this disclosure requirement. Because Lathfield did not have a landlord tenant license, the City also denied its tenants' general business license applications.

In January 2021, each of the three Lathfield entities sued the City; the DDA; the City's inspection contractor, McKenna & Associates, Inc. ("McKenna"); and Jim Wright, McKenna's building inspector, in Michigan state court. *Lathfield Holdings LLC v. Dahl Real Est. LLC*, No. 363502, 2023 WL 6168972 (Mich. Ct. App. Sept. 21, 2023). In its complaint, Lathfield brought eleven claims, nine of which were against the City. In those claims, it sought declarations that (i) the Property is not subject to site plan approval, (ii) Lathfield is not obligated to obtain a general business license, (iii) the City improperly prejudiced the rights of Lathfield's third party tenants by denying their applications for business licenses based on Lathfield's failure to obtain a landlord rental license, and that (iv) the Property, as presently constructed, is permitted as a preexisting, nonconforming use. In addition, Lathfield also alleged that (v) the City violated its due process rights, (vi) the City violated its equal protection rights, (vii) the City Code's requirement that an applicant disclose the names and businesses of its tenants violates the Contracts Clauses of the United States and Michigan Constitutions, (viii) the City violated the Fifth Amendment's Takings Clause through inverse condemnation of the Property, and that (ix) the City engaged in an unlawful civil conspiracy to compel Lathfield to undertake actions to comply with alleged code violations not required by law. Lathfield brought its constitutional claims against the City under 42 U.S.C. § 1983. The City removed all three suits to the United States District Court for the Eastern District of Michigan, where they were consolidated.

The City, McKenna, and Wright each moved for summary judgment. The district court granted in part McKenna and Wright's motion and granted the City's motion summary judgment

in its entirety.  After the district court denied McKenna and Wright's motion for reconsideration, it dismissed all claims against those two defendants by stipulated order.  The district court granted summary judgment for the City on all nine claims.

Lathfield now appeals the district court's grant of summary judgment on the nine claims against the City.

## II.

We review a district court's grant of summary judgment de novo.  *First Floor Living LLC v. City of Cleveland*, 83 F.4th 445, 454 (6th Cir. 2023), *cert. denied*, 145 S. Ct. 146 (2024).  Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In applying this standard, we construe all facts and inferences in the light most favorable to the nonmoving party.  *McIntosh v. City of Madisonville*, 126 F.4th 1141, 1146 (6th Cir. 2025).

## III.

We affirm the district court's grant of summary judgment to the City on all nine claims and address each claim in turn.

## A.

Lathfield argues that the district court erred in dismissing its request for a declaration that it was not subject to the City's site plan approval process as moot.  We may only adjudicate live cases or controversies.  U.S. Const. art. III, § 2; *see also Davis v. Colerain Twp.*, 51 F.4th 164, 170 (6th Cir. 2022).  The mootness doctrine requires that a claim be "live" at the time the court decides it.  *Gottfried v. Medical Plan. Servs.*, 280 F.3d 684, 691 (6th Cir. 2002) (citation omitted).  The core mootness inquiry "is whether the relief sought would, if granted, make a difference to the legal interests of the parties."  *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc) (citation omitted).  In determining whether a request for declaratory relief is moot, we ask "whether the facts alleged, under all the

circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (citation omitted).

A declaration from the district court that Lathfield was not required to submit a site plan for City approval would not affect Lathfield's legal interests. Lathfield asserts that it was not seeking a generalized declaration that the Property would *never* be subject to site plan approval in the future.[3] Instead, it sought a declaration that it was not required to undergo site plan approval because, in Lathfield's view, at the time the July 2020 Inspection Report was issued, it was not required to submit new site plans. But the issue with the relief that Lathfield seeks lies in the fact that Lathfield already completed the site plan review process in connection with the code violations found in the July 2020 Inspection Report. Moreover, in September 2020, Jason Curis, Lathfield's own managing member, appeared before a Planning Commission meeting to summarize the site plan, answer questions about it, and to facilitate its approval. At the end of that meeting, the Planning Commissioners voted to approve Lathfield's proposed site plan. Because the City already approved Lathfield's proposed site plan, Lathfield lacks a "legally cognizable interest" in the relief it seeks. *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (citation omitted).

Lathfield also argues that the district court should have issued a declaration, even if it would not address a "live" controversy, because a declaration would have guided the City's future conduct with respect to other parties. But we do not have the authority to "give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before [us]." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citation omitted). The Supreme Court has explained that "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit," a claim is moot "if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85,

---

[3]Lathfield does not otherwise argue that the "capable of repetition, yet evading review" exception to the mootness doctrine applies. *See In re Flint Water Cases*, 53 F.4th 176, 188–89 (6th Cir. 2022) (explaining the exception and its requirements).

91 (2013) (internal quotation marks and citation omitted). It follows that, even if we accept Lathfield's premise that the City improperly required Lathfield to undergo a site plan review, there is no "substantial controversy" of "immediacy and reality" because Lathfield is no longer undergoing the City's site review process. *Preiser*, 422 U.S. at 402 (citation and emphasis omitted).

We conclude that the district court did not err in dismissing this request for declaratory relief as moot because Lathfield's claim was no longer "live" at the time of the district court's decision.

## B.

Lathfield next argues that the district court erred in denying its request for declaratory relief that, under the City Code, it has no obligation to obtain a general business license. The City Code requires every person "conducting business" in the City to apply for and obtain a general business license. City Code, ch. 18, art. II, § 18-30(a). This general business license requirement applies even to those that "are already conducting business within th[e] [C]ity and do not hold a license." *Id.* The question is whether Lathfield is "conducting business" within the City, as defined by the City Code.

Lathfield's argument relies on its assertion that leasing Property space to commercial tenants falls outside the City Code's definition of "conducting business." According to Lathfield, it does not conduct business because it does not supply commodities, nor does it sell any goods or merchandise. But the City Code defines "conducting business" broadly. The broad heading of "conducting business" includes (i) "[p]ursuing a business," which includes "any form of activity that has for its end the production or supplying of commodities," *id.*, § 18-26(1); (ii) "[a]cting as a merchant," which includes "selling goods, wares and merchandise," *id.*, § 18-26(2); and (iii) "[p]erforming a trade," which includes "all other kinds of vocations, occupations, enterprises, establishments and kinds of activity not included in the definition of the term 'merchant' or 'business,'" *id.*, § 18-26(3).

Lathfield's business falls within this broad third category of "performing a trade." Given that § 18-26(3) states that "conducting business" includes "all other kinds of vocations,

occupations, enterprises, establishments and kinds of activity not included in the definition of the term 'merchant' or 'business,'" it operates as a catch-all provision for other businesses that do not involve the sale of goods or merchandise. "Trade" is defined as "[t]he business of buying and selling or bartering goods or *services*." *Black's Law Dictionary* (12th ed. 2024) (emphasis added). Although Lathfield does not sell goods or merchandise, it nonetheless operates as a business and provides commercial leasing services by offering rental units for mixed use office, retail, and services.

Although "not every income-producing and profit-making endeavor constitutes a trade or business," Lathfield did not lease commercial space as a mere "sporadic activity" or "hobby." *Comm'r of Internal Revenue v. Groetzinger*, 480 U.S. 23, 35 (1987). Before purchasing the Property, Lathfield engaged in lengthy due diligence efforts to evaluate the Property's profitability, including by reviewing rent rolls. After buying the Property, Lathfield contracted with a property management company for help with maintaining rent rolls, negotiating lease contracts, coordinating tenant rental payments, and maintaining the physical space. In other words, it is clear Lathfield was engaged in the business of leasing commercial space "with continuity and regularity" for profit. *Id.*

We conclude that Lathfield is engaged in "conducting business" in the City, as defined by Chapter 18, Article II, § 18-26(3) of the City Code. Therefore, under City Code § 18-30(a), Lathfield must obtain a general business license. The district court did not err in concluding that Lathfield is required to obtain a general business license.

## C.

Lathfield argues that the district court erred in denying its request for a declaration that the City improperly prejudiced the rights of Lathfield's third party tenants because Lathfield does not have a landlord rental license. Lathfield offers two independent reasons in support of its argument. First, according to Lathfield, the City Code did not clearly condition a tenant's ability to obtain a business license on the owner's possession of general business and landlord rental licenses. Second, even if such condition exists under the City Code, the City's underlying denial of Lathfield's landlord license application was itself unlawful because the City Code does

not require Lathfield to disclose the names and principal businesses of Property occupants, given that it was "licensing"—rather than "leasing"—Property space.

As a threshold issue, we agree with the district court that Lathfield lacks Article III standing to vindicate the rights of its tenants rather than its own. Nevertheless, we address the merits of Lathfield's arguments, based on its own injuries stemming from its inability to obtain business and landlord rental licenses.

1.

The district court did not err in holding that Lathfield lacks standing to assert the rights of its tenants rather than its own. Under the rarely applicable "third-party standing" exception, a plaintiff may raise a claim on behalf of a third party if he can prove "(1) injury-in-fact to the plaintiff, (2) a close relationship between the plaintiff and the third party whose rights he asserts, and (3) a hindrance preventing the third party from raising his own claim." *Moody v. Mich. Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017).

But Lathfield makes no argument for applying that exception here. In particular, Lathfield does not allege that there is a close relationship between Lathfield and its tenant, nor does it allege that there is a hindrance preventing its tenants from raising their own claims. Unlike the cases in which the Supreme Court has found third party standing, we see no indication that the tenants face any obstacle in litigating their rights themselves. *See id.* at 402–03 (collecting cases). Because Lathfield has not satisfied the requirements for third party standing, it lacks standing to pursue the rights of its third party tenants. *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 208–09 (6th Cir. 2011); *Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 479 F. Supp. 3d 570, 585 (W.D. Mich. 2020), *aff'd sub nom.*, 13 F.4th 531 (6th Cir. 2021).

2.

Contrary to Lathfield's assertion, the City Code makes clear that whether a tenant can be approved for a business license depends on whether the building owner has a landlord rental license. The City Code unambiguously states that "*[e]ach rental unit . . .* shall be registered with

the city clerk . . . on an annual basis prior to any premises or part thereof being offered for occupancy, and *shall not be occupied without acquiring a landlord license*[.]" City Code, ch. 18, art. IV, § 18-183(a) (emphases added). The City Code also provides that "[i]t shall be the *responsibility of the owner* of any building within the City . . . from which space is leased for nonresidential use . . . to file on an annual basis . . . a list of all tenants in such building and the principal business of each tenant." City Code, ch. 18, art. II, § 18-33(a) (emphasis added). Reading §§ 18-183(a) and 18-33(a) together, no rental unit can be occupied for business unless the owner of a building first fulfills its responsibility of obtaining a landlord license and registers its rental units by listing the names of its tenants and their principal businesses. *Id.*, art. IV, § 18-183(a), (e); *id.,* art. II, § 18-33(a).

With regard to business license approval in particular, under the City Code, the City may only approve a general business license application if it "determines that such person's business, *as and where conducted or proposed to be conducted*, will not be in violation of . . . city ordinances." *Id.*, § 18-30(d) (emphasis added). Thus, if the City Code prohibits a tenant from occupying a rental unit because a landlord violates § 18-33(a)'s tenant registration requirement, a tenant's business application to occupy the same rental unit cannot be approved. The district court did not err in concluding that the City Code conditions the approval of a tenant's business license application on a building owner's ability to obtain, and satisfy the requirements for, a landlord rental license.

Lathfield contends that, even if the City Code conditions the approval of tenant business license applications on a building owner's ability to obtain a landlord rental license, these provisions of the City Code governing business and landlord rental licenses do not apply here because its tenants are "licensees" rather than bona fide "tenants" subject to leases. Although we recognize that there are differences between leases and licenses, *see, e.g.*, *N. Canton Bd. of Educ. v. Am. Tel. & Tel., Inc.*, 822 F. App'x 324, 329 (6th Cir. 2020), in applying the City Code, we must look to the City Code's definition of what constitutes a "lease," *see O'Neill v. Louisville/Jefferson Cnty. Metro Gov't*, 662 F.3d 723, 728–29 (6th Cir. 2011).

Under Michigan law, "when a statute specifically defines a given term, that definition alone controls." *Tryc v. Mich. Veterans' Facility*, 545 N.W.2d 642, 646 (Mich. 1996). The City Code specifically defines "leasing" or "renting" as "providing property to a person or entity *for any period of time* in exchange for monetary remuneration or other benefit." City Code, ch. 18, art. IV, § 18-181 (emphasis added). Considering Lathfield's sample "license agreement" in the record, Lathfield provided one of its licensees the right to use and occupy 700 square feet of the Property "between 10:00 A.M. and 12:00 A.M. on Monday through Thursday, and twenty-four (24) hours per day on Friday through Sunday," in return for $800 per month. DE 40-15, License Agreement, Page ID 1629–30. Although the agreement states that "Licensee is not a tenant and has no possessory interest in the License Area," *id.*, Page ID 1629, under § 18-181's definition, Lathfield was "leasing" the Property space because it provided the Licensee property for a period of time in return for monetary remuneration.

Because Lathfield was "leasing" Property space as a landlord, it is subject to the City Code's landlord rental requirements, including § 18-33(a)'s tenant registration requirement. The district court did not err in holding that Lathfield was not entitled to declaratory relief that it was exempt from landlord rental licensing requirements.

D.

Lathfield argues that the district court erred in granting summary judgment to the City on Lathfield's claim for a declaration that the Property, as presently constructed, is permitted as a preexisting, nonconforming use. It also argues that the district court erred in rejecting its claim that the City should be barred from enforcing its zoning and site plan requirements based on the equitable doctrines of estoppel and laches. We disagree and affirm the district court's grant of summary judgment to the City on both points.

1.

The district court did not err in holding that the doctrine of nonconforming use does not apply. Under Michigan law, "[a] prior nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date." *Heath Twp. v. Sall*, 502 N.W.2d

627, 629 (Mich. 1993). This doctrine is meant to protect property owners from intervening zoning changes, balancing their rights against the needs of local government. *Gerrish Twp. v. Esber*, 506 N.W.2d 588, 588–89 (Mich. Ct. App. 1993); Mich. Comp. Laws § 125.3208(1) (codifying the doctrine of nonconforming use as applied to the zoning laws of "counties, townships, and cities and villages").

Critically, the vested right to use a particular property for a nonconforming use is limited to the area that was nonconforming—but otherwise lawful—*before* the adoption of a zoning ordinance. *Gackler Land Co. v. Yankee Springs Twp.*, 398 N.W.2d 393, 398 (Mich. 1986). The City's Zoning Ordinance accurately reflects how Michigan's doctrine of nonconforming use applies. Section 7.8(1) of the City's Zoning Ordinance states that "[t]he lawful use of land or structure exactly as the land . . . [or] structure existed *at the time of enactment of this ordinance* . . . may be continued[.]" DE 40-11, City Zoning Ordinance, Page ID 1414 (emphasis added). "Nonconforming uses which were not lawful at the time this ordinance was enacted," however, "are prohibited and shall be abated and brought into conformity." *Id.*, Page ID 1415.

Thus, the relevant inquiry in determining whether the nonconforming use exception applies is whether the Property existed as a lawful use *before* the zoning ordinance was enacted. *See City of Troy v. Papadelis*, 572 N.W.2d 246, 250 (Mich. Ct. App. 1997). In other words, "[t]o be protected, the nonconforming use must have been legal at one time." *Lyon Charter Twp. v. Petty*, 896 N.W.2d 477, 489 (Mich. Ct. App. 2016) (per curiam). On the other hand, "a use that violates the zoning ordinances since its inception does not draw such protection." *Id.* The Property is not a nonconforming use for two reasons.

First, Lathfield neither alleges nor offers any evidence that the Property, as currently constructed and operated, existed as a lawful use before the City Zoning Ordinance's effective date of December 1, 2010. Instead, it contends that, without records of the permits for the original construction, the City cannot know that subsequent construction violated the original plans and/or involved a change in use. But Lathfield ignores the evidence the City presented about its basis for both conclusions, and offers no evidence of its own to support its argument. Conclusory statements are no substitute for evidence. *Blount v. Stanley Eng'g Fastening*, 55

F.4th 504, 513 (6th Cir. 2022) ("[U]ncorroborated assertions are insufficient to sustain [the non-movant's] burden of proof at the summary-judgment phase of the case.").

Lathfield also states in a conclusory manner that "[t]o the extent the Property . . . doesn't comply with the City's codes and ordinances, it is permitted as pre-existing, non-conforming use" based on the City's alleged refusal to enforce City ordinance violations against the Property's previous owner.  CA6 R. 24, Appellant's Br., at 28 (citation omitted).  It emphasizes that the Property did not comply with the City's ordinances when it bought the Property in 2020 and that the City, for fifteen years, had adopted a permissive approach toward enforcing the City Zoning Ordinance.  But whether the Property complied with the City's ordinances when Lathfield bought it in 2020 is immaterial.

The issue is whether the Property operated lawfully as a commercial property with retail store use before the City Zoning Ordinance was enacted on December 1, 2010.  According to the City's December 2017 letter, by renting Property space to retail stores, the Property had exceeded the approved use for which it was classified under the 2015 Michigan Building Code.  In particular, the Property was only approved for Business Group B occupancy, which does not permit retail store use.  *Compare* 2015 Mich. Bldg. Code, ch. 3, § 304.1 (Business Group B), *with id.*, § 309.1 (Mercantile Group M).  Lathfield does not offer City-approved plans, certificates of occupancy, permits for subsequent renovations, or any other record evidence that would suggest that the Property, as currently operated with retail store use, had complied with the City's zoning laws before December 1, 2010.  Therefore, Lathfield cannot establish a legally cognizable nonconforming use in the Property as a commercial property with retail store use.

Moreover, based on the record evidence, it is unclear whether the Property ever complied with the City Code.  As Lathfield's own managing member Jason Curis put it, "there were so many half-assed . . . things done" on the Property.  Paul Cronk, the electrical inspector who inspected the Property in July 2020 on the City's behalf, stated that "[m]uch of [the Property's] wiring was done in an unprofessional, illegal and unsafe manner."  DE 40-7, Cronk Dep., Page ID 1025.  Cronk added that pervasive issues on the Property, such as exposed wiring, would not have been legal even in the 1960s when the Property was originally constructed.  When asked

whether the Property would have passed an electrical inspection based on the City's ordinances in the 1960s, Cronk responded, "Absolutely not." DE 40-7, Cronk Dep., Page ID 1044. The doctrine of nonconforming use does not apply because Lathfield has not demonstrated that the Property ever operated lawfully before the City Zoning Ordinance became effective on December 1, 2010.

Second, the nonconforming use doctrine does not exempt Lathfield from remediating state and municipal violations detailed in the July 2020 Inspection Report related to health, safety, and licensing. The Michigan Supreme Court has made clear that the doctrine of nonconforming use "only applies in the context of *zoning* regulations." *Adams Outdoor Advert. v. City of E. Lansing*, 614 N.W.2d 634, 637 n.2 (Mich. 2000) (emphasis added) (noting the "unprecedented handcuffing of the government that would ensue if public health and safety regulations were subject to nonconforming use analysis"). Therefore, even if the Property is an example of nonconforming use despite no indication that the Property complied with City zoning laws before December 1, 2010, it is "still subject to regulatory ordinances." *Norton Shores v. Carr*, 265 N.W.2d 802, 807 (Mich. Ct. App. 1978) (per curiam). In sum, regardless of whether the Property is a "nonconforming use," Lathfield would not have been excused from complying with the City's ordinances related to health and safety, nor would it have been excused from its obligation to obtain both general business and landlord rental licenses. *See id.*; *cf. MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 413 (E.D. Mich. 2019).

2.

Lathfield also argues that the City's alleged decades-long failure to enforce violations bars the City from now taking enforcement actions against it under the equitable doctrines of estoppel and laches. The district court did not err in rejecting Lathfield's claims under both doctrines.

"Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts." *Van v. Zahorik*, 597 N.W.2d 15, 22 (Mich. 1999). Generally,

a municipality's zoning authorities cannot be estopped from enforcing their ordinances absent exceptional circumstances. *Howard Twp. Bd. of Trustees v. Waldo*, 425 N.W.2d 180, 185 (Mich. Ct. App. 1988) (per curiam).

"The doctrine of laches is a tool of equity that . . . is applicable in cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Pub. Health Dep't v. Rivergate Manor*, 550 N.W.2d 515, 520 (Mich. 1996). Laches is an equitable defense that focuses on the inequity of allowing an unexcused delay to prejudice the party asserting it. *Smith v. Twp. of Holly*, No. 306406, 2013 WL 4081083, at *3 (Mich. Ct. App. Aug. 13, 2013) (per curiam); *DayCab Co. v. Prairie Tech., LLC*, 67 F.4th 837, 854 (6th Cir. 2023). A municipality's delay in enforcement, alone, does not exempt a party from complying with zoning ordinances. *Lyon Charter Twp.*, 896 N.W.2d at 481. Both equitable estoppel and laches "'are judicially disfavored' because they invite judicial interference into an area of local 'public interest' and are 'rarely applied in the zoning context except in the clearest and most compelling circumstances.'" *Id.* (citation omitted).

Lathfield argues that both equitable estoppel and laches bar the City from enforcing its ordinances because of the City's past pattern of non-enforcement and Lathfield's justified belief that the City would not seek to enforce its ordinances. But the City had communicated its intention to bring the Property into compliance with local ordinances long before Lathfield bought the Property in 2020. Lathfield's unsupported allegations concerning the City's delay in enforcement conflict with the City's extensive, multi-year effort to secure the Property's compliance with its ordinances.

As early as April 2016, the City conveyed its intent to enforce its ordinances. The City sent the Property's previous owner Dhal a letter, titled "FINAL NOTICE," regarding Dhal's failure to comply with the City's ordinances concerning permitting requirements. DE 42-10, Final Notice of Violation, Page ID 2074. In the April 2016 letter, the City informed Dhal that its failure to comply with the City Code's permitting requirements would "be deemed a misdemeanor punishable by a fine of not less than $100.00 nor more than $500.00 and/or

imprisonment" and urged Dhal to "correct the above cited problems immediately and notify the City's Code Enforcement Department that the corrections have been made." *Id.* After Dhal made no attempt to comply with the City's ordinances, the City sued Dhal in state court to enforce its ordinances and, in September 2017, secured an order from the court requiring Dhal to obtain all requisite permits for the Property and comply with the City Zoning Ordinances' provisions related to the proper removal of trash. DE 42-12, Order to Correct, Page ID 2079–81.

The City was also clear about its intention to enforce its site plan requirement. In December 2017, the City issued Dhal another notice letter informing it of the Property's "Use Change" violation because of its retail store use. In that letter, the City informed Dhal that, under Chapter 6 of the City Zoning Ordinance, it was required to submit new site plans demonstrating compliance with the Michigan Building Code and the City's ordinances. The letter unambiguously stated, "If the required site plans are not submitted within 30 days from the date of this notice, enforcement action will proceed under Section 114 of the 2015 Michigan Building Code. . . . The City of Lathrup Village also retains it[s] right to file a lien against all properties to cover any and all costs incurred to remediate the violations noted." DE 42-11, December 2017 Notice Letter, Page ID 2077. Even after issuing this letter in December 2017, the City continued writing to Dhal to ask about its efforts to cure its code violations and stated, in a June 2019 email, that the City would have to "write citations for each individual violation" if they were not promptly addressed. DE 42-14, June 2019 Email, Page ID 2087. After Dhal continued to ignore its notices, the City followed through on its promises to enforce compliance. In December 2019, the City issued several code violation citations, including citations for Dhal's failure to submit new site plans based on a change in use.

As the subsequent owner of the Property, Lathfield could not have failed to appreciate the City's intention to enforce its ordinances. Before Dhal sold the Property to Lathfield, Dhal presented a January 2020 letter from DDA Director Susie Stec summarizing the outstanding code violations for which the Property had been cited. In Jason Curis's own words, "I·know I received the Susie Stec letter . . . about a week before closing." DE 40-2, Curis Dep., Page ID 606.

The January 2020 letter from Susie Stec stated that there were "planning and zoning challenges which must be addressed as soon as possible" related to the site plan requirement and parking standards, under the City's ordinances.   DE 42-20, December 2020 Letter, Page ID 2100–01.  The letter continued, "[i]t is the city's expectation that *complete site plan review applications are submitted no later than Monday, February 2, 2020 at 2pm.*"  *Id.*, Page ID 2101.  The January 2020 letter Dhal presented to Curis was unequivocal about the City's intention to enforce its ordinances.

After Lathfield closed on the Property on January 28, 2020, in February 2020, Jason Curis, Lathfield's managing member, met with City planning officials and acknowledged that, under the City's ordinances, it would have to undergo additional inspections, correct various code violations, and submit new site plans to the City.  Curis listed the following tasks in his email summary of his meeting with the City officials: "Ownership to Apply for Site Plan Approval at Planning Commission," "Detailed Inspection to be Scheduled for all 3 Buildings on or before April 30, 2020," and "Detailed Report of all Corrections Due to Ownership on or before May 10, 2020."  DE 42-23, Curis Meeting Notes, Page ID 2114.  Lathfield was aware of the City's determination to enforce its ordinances, especially after meeting with the City's planning officials.

The City sent several enforcement notices, issued several enforcement citations, and even sued Dhal for code violations and secured a court order to enforce its ordinances against the Property.  We conclude that the City's communications with Lathfield and Dhal could not have plausibly suggested that the City would decline to enforce its ordinances.  To the contrary, the record evidence makes clear that the City fully intended to enforce its ordinances and bring the Property into compliance with state and local regulations.  Lathfield's equitable estoppel claim fails because the City neither intentionally nor negligently induced Lathfield to believe that it would not enforce its ordinances.  *Van*, 597 N.W.2d at 22; *see also Charter Twp. of W. Bloomfield v. United German Am. Recreational Soc'y*, No. 366565, 2025 WL 511175, at *8 (Mich. Ct. App. Feb. 14, 2025) (per curiam).

For similar reasons, we also conclude that Lathfield's laches claim fails because the City did not show a lack of diligence in enforcing its ordinances, given that it has been consistently pursuing enforcement of its ordinances since at least 2016. The district court did nor err in rejecting Lathfield's claims that the City should be barred from enforcing its ordinances based on the equitable doctrines of estoppel and laches.

E.

Lathfield argues that the City violated the Due Process Clause of the Fourteenth Amendment in two ways. First, according to Lathfield, the City failed to provide adequate notice that its inspectors would be applying more recent versions of the Michigan Building Code when the City's adopting ordinance only purports to adopt the 2006 version of the Michigan Building Code. Second, according to Lathfield, the City refused to honor its right of appeal to challenge the findings of the July 2020 Inspection Report.

Although Lathfield presents its due process challenge as a substantive due process claim, its arguments relate to procedural notice and the opportunity to be heard. Therefore, we understand Lathfield to be presenting first and foremost a procedural due process claim. *See United States v. Louisville & Nashville R.R. Co.*, 221 F.2d 698, 701 (6th Cir. 1955) ("[T]he label which a plaintiff applies to his pleading does not determine the nature of the cause of action.").

1.

The Fourteenth Amendment of the United States Constitution protects individuals against the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The clause has both a substantive and a procedural components. The substantive component protects individual liberties against "certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citation omitted). The procedural component, on the other hand, guarantees a "fair procedure" when the government seeks to deprive an individual of life, liberty, or property. *Id.* To prevail on claims under either component, a plaintiff has the burden of establishing that he has a protected liberty or property interest. *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564,

573 (6th Cir. 2008) (substantive due process); *Richardson v. Twp. of Brady*, 218 F.3d 508, 516–17 (6th Cir. 2000) (procedural due process).

The Supreme Court has explained that the Constitution itself does not create property interests; "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it." *McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 412 (6th Cir. 2006) (citation omitted). Thus, the threshold question is whether Lathfield has a protected liberty or property interest to trigger due process protections in the first instance. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Although Lathfield argues that the City failed to properly adopt subsequent updates to the 2006 version of the Michigan Building Code under the state adoption procedures set out in Mich. Comp. Laws § 117.3(k), Lathfield has not identified either a liberty or property interest of which it has been deprived. To the extent that Lathfield argues that it has a property interest in the adoption procedures themselves, its argument lacks merit. Our court has previously held that, for purposes of a procedural due process claim, an individual has "no protected property interest in the procedure itself." *Richardson*, 218 F.3d at 518. This is because a mere failure to comply with state or local procedural requirements does not, alone, constitute a denial of due process. *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010); *Onyx Properties LLC v. Bd. of Cnty. Comm'rs of Elbert Cnty.*, 838 F.3d 1039, 1044 (10th Cir. 2016) ("Violation of state procedural requirements . . . does not in itself deny federal constitutional due process."), *cert. denied*, 137 S. Ct. 1815 (2017). Instead, the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause. *See Bates v. Sponberg*, 547 F.2d 325, 329–30 (6th Cir. 1976). But, here, Lathfield's argument is limited to its claim that the City's adoption of § 14-26 of the City Code violated the state procedures set out in Mich. Comp. Laws § 117.3(k). For this reason, Lathfield's due process claim fails.

Both the Supreme Court and this court have long ago held that legislative acts equally affecting many people, such as the City's adoption of § 14-26 of the City Code, do not implicate procedural due process concerns. *See Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915); *Smith*, 641 F.3d at 216–17; *Pickney Bros. v. Robinson*, 194 F.3d 1313, 1999 WL 801514, at *4 (6th Cir. 1999) (unpublished table decision) (holding that because municipal board's actions were legislative in nature, plaintiffs were "not entitled to actual notice and, therefore, was not deprived of procedural due process"); *see also Chicago Area Council, Inc. v. Blue Lake Twp.*, No. 285691, 2010 WL 986500, at *10 (Mich. Ct. App. Mar. 18, 2010) (per curiam) (holding that plaintiff could not allege a property interest because the adoption of a municipal ordinance is part of the legislative process). In *Bi-Metallic*, the Colorado Tax Commission and the State Board of Equalization ordered a forty percent increase in the valuation of all taxable property in Denver. *Bi-Metallic*, 239 U.S. at 443. A property owner subsequently sued to enjoin the enforcement of the order, alleging that he was not allowed to be heard and that his property was being taken in violation of his procedural due process rights. *Id.* at 444. The Supreme Court rejected the property owner's procedural due process claim, holding that procedural due process does not govern the enactment of generally applicable legislative acts. *See id.* at 445–46.

*Bi-Metallic* controls because the adoption of a generally applicable zoning ordinance is a legislative act. *See Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989) (holding that the defendants "clearly were acting in their legislative capacities in passing the 1978 zoning ordinance"); *accord Harris v. Cnty. of Riverside*, 904 F.2d 497, 502 (9th Cir. 1990) (noting that the adoption of a general zoning plan "that affected a large number of people . . . would not ordinarily give rise to constitutional procedural due process requirements"); *Onyx Properties LLC*, 838 F.3d at 1046–47 (collecting cases). Under *Bi-Metallic*, because the City's adoption of § 14-26 of the City Code is a broadly applicable legislative act, it does not implicate procedural due process concerns, despite any possible failure on the City's part to comply with state-required adoption procedures.[4] *Norton v. Vill. of Corrales*, 103 F.3d 928, 930 (10th Cir. 1996)

---

[4]To be clear, a municipality's failure to comply with state-required adoption procedures may nonetheless render the ordinance invalid under state law. *See Ewing v. City of Detroit*, 604 N.W.2d 787, 792 (Mich. Ct. App.

(holding that a municipality's failure to properly adopt an ordinance in accordance with state law, alone, "is not a matter of federal judicial cognizance" under the Due Process Clause of the Fourteenth Amendment) (citation omitted)); *see also Onyx Properties LLC*, 838 F.3d at 1047–48 (holding that due process did not require municipal board to give notice or hold public hearings before adopting regulations even if board did not follow state-required adoption procedures). We therefore conclude that the City did not violate Lathfield's constitutional due process rights. *See Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007) ("[W]e may affirm on any grounds supported by the record even if different from the reasons of the district court." (citation and internal quotation marks omitted)).

2.

Lathfield also argues that the City violated its procedural due process rights by denying it an appellate process to challenge the findings of the July 2020 Inspection Report. But, as discussed, Lathfield has not identified either a liberty or property interest of which it has been deprived to support a procedural due process claim on this ground. Moreover, even if we understand Lathfield to be implicitly alleging a property interest in the Property's prior zoning classification, Lathfield's procedural due process claim still fails.

Under Michigan law, reliance on a prior zoning classification may be sufficient to create a property interest. *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 897 (6th Cir. 1991). This property interest arises if the property is either lawful under the doctrine of nonconforming use, *Heath Twp.*, 502 N.W.2d at 629–30, or if the plaintiff "actively pursued and completed a course of action of an inarguably substantial character" in reliance on the prior zoning classification, *Nasierowski Bros. Inv. Co.*, 949 F.2d at 897. Lathfield does not have a property interest in the Property's prior zoning classification because (i) the doctrine of nonconforming use does not apply given that Lathfield has not shown that the current use of the Property was ever operated for a "lawful use," *see supra* Section III(D)(1), and (ii) Lathfield does not claim to have either applied for a building permit or otherwise expended substantial

---

1999). But we need not address whether that occurred here in the context of Lathfield's constitutional due process claim.

resources in reliance on representations that their use of the Property was a lawful nonconforming use. Therefore, the requirements of procedural due process do not apply. *Bd. of Regents of State Colls.*, 408 U.S. at 569 ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). The district court did not err in granting summary judgment for the City on Lathfield's due process claims.

F.

Lathfield argues that the City violated the Equal Protection Clause of the Fourteenth Amendment by selectively enforcing its ordinances against it and treating it differently from other similarly situated owners of commercial real property. Lathfield pursues its equal protection claim based on a "class-of-one" theory.

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This clause is a "direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Under a "class-of-one" theory, Lathfield must show that (i) the City "intentionally treated" it "differently from others similarly situated" in all relevant respects, and (ii) "that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). To prevail on this theory, Lathfield must show that it was treated differently than those similarly situated in all relevant respects. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011). In addition, Lathfield must show that the City's actions were "so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Id.* (citation omitted). In sum, Lathfield must overcome a "heavy burden" to prevail on its "class-of-one" theory. *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citation omitted).

Lathfield has not satisfied the first element of its "class-of-one" equal protection claim because it does not offer evidence demonstrating that the City treated it differently from similarly situated property owners. Lathfield states, without support, that it "has been treated differently

from other owners of commercial real Property in the City." CA6 R. 24, Appellant's Br., at 35. Lathfield provides no examples of similarly situated commercial property owners against whom the City has declined to enforce its ordinances. Bare allegations of differential treatment are insufficient to establish an equal protection violation. *Braun*, 519 F.3d at 575 ("[T]he failure to make any concrete allegations with respect to similarly situated persons mandates a grant of summary judgment in the defendant's favor."); *see also Tri-Corp Mgmt. Co. v. Praznik*, 33 F. App'x 742, 746–47 (6th Cir. 2002) (rejecting plaintiff's equal protection claim based on absence of specific allegations about similarly situated individuals). Here, too, we conclude that Lathfield's bare allegations of differential treatment cannot establish a cognizable "class-of-one" equal protection claim.

G.

Lathfield argues that the City Code's requirement that an applicant disclose the names and businesses of its tenants violates the Contracts Clauses of the United States and Michigan Constitutions. Lathfield points to a non-disclosure provision in its tenant lease agreements which states:

> Licensor and Licensee mutually agree to take all reasonable steps to ensure that the confidential information each party obtains from or about the other in connection with this agreement will remain confidential and will not be disclosed by the receiving party to any other individual or entity. For purposes of this provision, *"confidential information" shall include but not be limited to the names of the licensees*, their agents, managers, employees and/or shareholders; the names of the licensor, its agents, managers, employees, and/or shareholders; *the licensee[']s business identity or business operations in the licensed space*; and/or the rate of pay by the licensee for use of space from licensor.

DE 40-15, Sample License Agreement, Page ID 1641 (emphases added). According to Lathfield, § 18-33(a) of the City Code requiring Lathfield to list the names of its tenants and their principal businesses constitutes a substantial impairment of its contractual relationship with its tenants.[5]

---

[5]As discussed in Section III(C)(2), Lathfield also argues that § 18-33(a) of the City Code does not apply to it at all because its tenants are "licensees" rather than bona fide "tenants" subject to leases. We concluded that

The Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. The Supreme Court has outlined a three-part test for determining whether a law violates the Contract Clause. To prevail on a Contracts Clause claim, a plaintiff must show that (i) the legislation "operate[s] as a substantial impairment of a contractual relationship," (ii) the state lacks "a significant and legitimate public purpose behind the regulation," and (iii) "the adjustment of 'the rights and responsibilities of contracting parties'" is not based on "reasonable conditions" and is not "of a character appropriate to the public purposes justifying" the legislation. *Energy Rsrvs. Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–12 (1983) (citations omitted). The Michigan Constitution includes a similar prohibition, Mich. Const. art. I, § 10, which courts interpret "no[] . . . more expansively than its federal counterpart," *Att'y Gen. v. Mich. Pub. Serv. Comm'n*, 642 N.W.2d 691, 698 (Mich. Ct. App. 2002); *see also Blue Cross & Blue Shield of Mich. v. Milliken*, 367 N.W.2d 1, 14 (Mich. 1985) ("The federal balancing approach has been adopted by our Court for purposes of adjudicating state Contract Clause claims as well as federal Contract Clause claims.").

Lathfield asserted its Contracts Clause claims against the City under 42 U.S.C. § 1983. There is a threshold question of whether Lathfield can bring a Contracts Claim under § 1983. In *Kaminski v. Coulter*, we addressed whether the Contracts Clause amounts to a "right, privilege, or immunity" secured by the Constitution that is enforceable under § 1983. 865 F.3d 339, 345 (6th Cir. 2017). We noted that "the Supreme Court has never definitively held that an alleged Contracts Clause violation is cognizable as a § 1983 claim, " *id.* at 346, and that in *Carter v. Greenhow*, which concerned an alleged Contracts Clause violation brought under § 1983's predecessor statute, Revised Statute 1979, the Court held that the Contracts Clause, "so far as it can be said to confer upon or secure to any person any individual rights, does so *only indirectly and incidentally*," 114 U.S. 317, 322 (1885). Extending *Carter*'s logic to the language contained in § 1983, we concluded that "an alleged Contracts Clause violation cannot give rise to a cause of action under § 1983." *Kaminski*, 865 F.3d at 347.

---

Lathfield is not exempt from § 18-33(a)'s tenant registration requirement because, under the statutory definition of "leasing," Lathfield was engaged in the activity of "leasing." *See supra* Section III(C)(2).

Bound by *Kaminski*, we conclude that Lathfield cannot establish a Contracts Clause claim under the United States Constitution. *Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*, 29 F.4th 325, 334 (6th Cir. 2022). For the same reason, Lathfield cannot establish a Contracts Clause claim under the Michigan Constitution either, to the extent that Lathfield relies on § 1983 to provide a remedy for a Contracts Clause violation under the Michigan Constitution. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (holding that § 1983 does not provide redress for violations of state law). And Lathfield does not identify any authorities under Michigan law indicating that an independent private right of action exists to support its Contracts Claim under the Michigan Constitution, so it has forfeited any such argument.

But even assuming *arguendo* that (i) § 1983 could support an alleged Contracts Clause violation and (ii) there was a state remedy for Lathfield's Contracts Clause claim under the Michigan Constitution, the claims still fail. The Contracts Clause only applies if a state or local law interferes with *existing* contractual relationships. *Ashley Sveen v. Kaye Melin*, 584 U.S. 811, 818–19 (2018); *see also Aguirre v. Michigan*, 891 N.W.2d 516, 523 (Mich. Ct. App. 2016) (per curiam) (stating that the core inquiry in evaluating a Contracts Clause claim is "whether a state law substantially impairs an existing contract"). In other words, while "a contract may not be destroyed by *subsequent* state legislation," *Seitz v. Prob. Judges Ret. Sys.*, 474 N.W.2d 125, 130 (Mich. Ct. App. 1991) (emphasis added), the contract must have existed at the time the state legislation was enacted, *Linton by Arnold v. Comm'r of Health & Env't.*, 65 F.3d 508, 518 (6th Cir. 1995) ("State action cannot impair a contract provision that did not exist at the time the state action occurred."). Here, the challenged provision, Chapter 18, Article II, § 18-33(a) of the City Code, was enacted on December 20, 1999, long before Lathfield bought the Property. Thus, because Lathfield's contracts with its tenants did not exist at the time § 18-33(a) was enacted, the City could not have violated the Contracts Clauses of the United States and Michigan Constitutions.

For the forgoing reasons, we conclude that the district court did not err in granting summary judgment in favor of the City on both Contracts Clause claims.

H.

Lathfield argues that the City violated the Fifth Amendment's Takings Clause through inverse condemnation by requiring that Lathfield comply with the Michigan Building Code and the City Zoning Ordinance. According to Lathfield, the City, by withholding business licenses, enforcing its ordinances, and acknowledging that the Property could be affected by a future widening of an adjacent road, has intentionally caused a decline in the Property's value and has thus effected a taking.

Under Michigan law, an individual may bring an inverse condemnation claim, which is available to property owners when government actions decrease their property's value, to remedy an alleged taking. *Krieger v. Dep't of Env't, Great Lakes, & Energy*, 17 N.W.3d 700, 724 (Mich. Ct. App. 2023), *appeal denied*, 998 N.W.2d 212 (Mich. 2023). Inverse condemnation is "a cause of action against a governmental defendant to recover the value of property which has been taken . . . even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Mays*, 954 N.W.2d at 148 (citation omitted). It "can occur without a physical taking of the property; a diminution in the value of the property or a partial destruction can constitute a 'taking.'" *Merkur Steel Supply Inc. v. City of Detroit*, 680 N.W.2d 485, 492 (Mich. Ct. App. 2004) (citation omitted).

To prevail on an inverse condemnation claim, a plaintiff must establish "(1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property." *Krieger*, 17 N.W.3d at 725 (citation omitted). An owner must demonstrate "a unique or special injury, that is, an injury that is different in kind, not simply in degree, from the harm suffered by all persons similarly situated." *Spiek v. Michigan Dep't of Transp.*, 572 N.W.2d 201, 209 (Mich. 1998).

Lathfield does not meet the first element of an inverse condemnation claim. Although it cites a decline in the Property's value based on the City's own estimates for tax years 2020 and 2021, Lathfield presents more speculation than supporting evidence to substantiate its claim that the City's actions caused the Property's decline in value. Lathfield could have offered any

number of forms of evidence, including estimates of lost profits due to lease terminations or a record showing a decline in lease renewals after the City's denial of business licenses. *See Merkur*, 680 N.W.2d at 498 (holding that it was not error to allow property owner to introduce projections of lost profits because it would not be "unduly speculative"). Instead, Lathfield merely asserts, without support, that "[t]he alleged rumors of condemnation limited the use of Lathfield's property and substantially impaired its value and marketability. . . . This resulted in diminishing value of the Property." CA6 R. 24, Appellant's Br., at 33. In short, Lathfield has not shown, through expert testimony or documentary evidence, that any decrease in the Property's value stems from the City's actions. We therefore conclude that Lathfield, on this record, cannot establish an inverse condemnation claim. *Krieger*, 17 N.W.3d at 725; *see also Mingo v. City of Detroit*, No. 277403, 2008 WL 2439993, at \*6 (Mich. Ct. App. June 17, 2008).

As for the second element, Lathfield also has not shown that it suffered a "unique" or "special" injury compared to similarly situated owners of noncomplying commercial real property. As discussed in the context of Lathfield's equal protection claim, *see supra* Section III(F), Lathfield offers no evidence suggesting that the City treated it differently from similarly situated property owners. Lathfield provides no examples of similarly situated commercial property owners against whom the City has declined to enforce its ordinances. Moreover, the enforcement of ordinances is well recognized as a constitutionally permitted and valid exercise of municipal police power. *Portage Twp. v. Full Salvation Union*, 29 N.W.2d 297, 301 (Mich. 1947). Unless its ordinances are found to be unreasonable regulations for which police powers may not be properly invoked, *People v. McKendrick*, 468 N.W.2d 903, 908 (Mich. Ct. App. 1991), the mere fact that the City sought to enforce its own ordinances, incidentally "depriv[ing] the property of its most beneficial use does not render it unconstitutional," *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 592 (1962).

Because Lathfield has not shown that it bears any "unique" or "special" injury beyond having to comply with the City's ordinances, we conclude that Lathfield's inverse condemnation claim under the Fifth Amendment's Takings Clause fails. The district court did not err in concluding that Lathfield met neither elements of an inverse condemnation claim.

I.

Finally, Lathfield argues that the City and its building inspector Jim Wright engaged in an unlawful civil conspiracy to compel Lathfield to undertake actions to comply with code violations allegedly not required by law. According to Lathfield, their actions caused it to lose several prospective tenants and, ultimately, diminished the Property's value.

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. v. Columbia Cas. Ins.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992). "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003) (per curiam), *aff'd*, 693 N.W.2d 358 (Mich. 2005) (citation omitted). Lathfield's civil conspiracy claim fails for two reasons.

*First*, Lathfield has not established that the City engaged in a separate, actionable tort. Even if Lathfield prevailed on its inverse condemnation claim, "[a]n inverse condemnation action is not a tort action." *Allen v. City of Laingsburg*, No. 286031, 2010 WL 539823, at *1 (Mich. Ct. App. Feb. 16, 2010) (per curiam). In its complaint, Lathfield did not allege any tortious conduct on the part of the City, as necessary to support its civil conspiracy claim. *Admiral Ins.*, 486 N.W.2d at 359.

*Second*, even if Lathfield had alleged tortious conduct by the City, it did not allege material facts showing the existence and scope of the conspiracy. *Payton v. City of Detroit*, 536 N.W.2d 233, 243 (Mich. Ct. App. 1995) (stating that "conclusory allegations of a conspiracy will not suffice"). As before, Lathfield makes only bare allegations of a conspiracy without any record evidence in support. It baldly asserts that "[a]s a concerted act with the City, Mr. Wright spread misleading information to Lathfield's contractors, tradespeople, licensees, and potential licensees, falsely stating that the Property was under condemnation and discouraged them from seeking permits for work on the Property." CA6 R. 24, Appellant's Br., at 36. In support, Lathfield relies on Wright's previous representation that the belief "that the properties were condemnable was *shared by the City and Plaintiffs' principal/representative Jason Curis*." DE

42, Wright's Mot. Summ. J., Page ID 1676 (emphasis added). But this statement far from demonstrates that the City and Wright combined in a concerted action to unlawfully damage Lathfield. Moreover, Wright's statement was made in the wholly unrelated context of whether his statements were entitled to qualified privilege in connection with Lathfield's later-dismissed business defamation claim against Wright. Lathfield has not marshaled evidence demonstrating the existence and scope of a conspiracy.

## IV.

For the forgoing reasons, the district court did not err in granting summary judgment for the City. Accordingly, we affirm the district court's grant of summary judgment on all nine claims.